## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. TURNER. (No. 8361.)

(Court of Civil Appeals of Texas. Dallas. Oct. 30, 1920. Rehearing Denied Nov. 27, 1920.)

1. Railroads ⚌5½, New, vol. 6A Key-No. Series—Venue of action against road under federal control proper.

In view of Federal Control Act March 21, 1918, § 10 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j), passenger's action for injuries sustained during federal control of railroad was not required to be brought either in the county in which the accident occurred or in the county in which passenger lived, as commanded by General Orders of Director General of Railroads No. 18 and 18a, since the state law authorized maintenance of such suit in another county.

2. Continuance ⚌46(8)—Application for continuance for absence of witness held properly refused.

Application for continuance for absence of witness after trial had already been continued to permit deposition of witness to be taken, stating that witness was ill and not able to testify by deposition without giving opinion of physician as to ability of witness to make a deposition, held properly refused.

3. Continuance ⚌22 — Discretionary with court.

Application for continuance of witness not living in county in which suit was pending, not being a statutory one, was addressed to the sound discretion of the trial court.

4. Appeal and error ⚌1050(1)—Admission of testimony harmless, where similar evidence admitted without objection.

Admission of testimony was harmless, where there was other testimony as to the same facts admitted without objection.

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Witnesses** ⊜⇒287(3)—**Plaintiff's testimony as to why she had not told physicians of injury held admissible in explanation of cross-examination.**

In a personal injury action, where defendant had cross-examined plaintiff as to her failure to tell physicians who had treated her subsequent to the injury about having received the injury, she was properly permitted to testify as to her reasons for not so doing.

**6. Appeal and error** ⊜⇒1050(1)—**Testimony as to why injured plaintiff failed to inform physicians as to injury held harmless.**

In personal injury action against railroad, plaintiff's testimony that she had not told physicians who had treated her of the injury because her husband was a railroad man and she did not want to have a lawsuit, if erroneously admitted, *held* harmless.

**7. Evidence** ⊜⇒183(14)—**Predicate for admission of secondary evidence of letter held sufficient.**

Evidence that person to whom letter had been written more than two years before the trial did not know where the letter was, but that he had not made a search for it because he did not keep his letters, and that it was probably destroyed, *held* proper predicate for admission of secondary evidence as to contents of letter.

**8. New trial** ⊜⇒99—**Granting of ˈfor newly discovered evidence, discretionary with court.**

The granting of a new trial on the ground of newly discovered evidence is largely discretionary with the trial court.

**9. Appeal and error** ⊜⇒981—**Ruling on motion for new trial not disturbed, in absence of abuse of discretion.**

Action of trial court on motion for new trial for newly discovered evidence will not be disturbed on appeal, in absence of abuse of discretion.

**10. Appeal and error** ⊜⇒1015(5)—**Time of discovery of new evidence for trial court.**

Whether alleged newly discovered evidence could have been discovered before the trial, *held* a question of fact for the trial court.

**11. New trial** ⊜⇒108(5)—**Not granted for newly discovered evidence as to injuries, where verdict is not claimed excessive.**

In personal injury action where verdict was not claimed to be excessive, appellate court will not set aside verdict and judgment to enable defendant to use newly discovered evidence on issue of nature and extent of plaintiff's injuries, or to affect her credibility as a witness.

**12. New trial** ⊜⇒108(5)—**On ground of newly discovered evidence of no or little value on another trial, held properly denied.**

In personal injury action motion for new trial on ground of newly discovered evidence that plaintiff subsequent to injury had made application for life insurance, in which she had stated that her health was in good condition, was properly denied, where both plaintiff and the physician who had filled in application testified that plaintiff had not authorized physician

to make such statements as to condition of her health, since under the circumstances the application would be of little or no value to defendant on a new trial.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Suit by Era B. Turner against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

E. B. Perkins, of Dallas, and Crosby & Harrell, of Greenville, for appellant.

Clark & Sweeton, of Greenville, for appellee.

TALBOT, J. Appellee sued the appellant to recover damages for personal injuries sustained by her on May 28, 1917, while a passenger on one of appellant's trains. She alleges that on said date she became a passenger upon appellant's train, known as the Lone Star Special, having boarded said train in Greenville, in Hunt county, for Ft. Worth, in Tarrant county, and that when the train entered the city of Ft. Worth, and before it arrived at the station in said city, appellee went to the dressing room of the chair car, and, while standing in front of the lavatory, the train on which she was riding collided with some other train, engine, or cars, or with something on the track, causing a violent jar, movement, and counter movement of the train, which threw her violently forward against the lavatory, her abdomen striking the lavatory with great violence, displacing her womb and ovary, and diseasing the same, from which injuries she immediately began to suffer pain, and continued to suffer until she was finally compelled to be operated on, in which operation it was necessary to remove entirely her womb and ovary; that from which suffering and the results of said operation she has suffered pain, nervousness, incapacity to labor, and expended for physicians and medical bills and hospital fees in the sum of $1,000, and has been damaged in the sum of $20,000 additional. Appellee alleged that at the time she received the injuries she was recovering from a former operation that had been performed upon her by surgeons at Greenville for appendicitis and the removal of some of her ovary and for prolapsus of her womb, but that said operation was a successful one, and she had been dismissed by her physicians, but was not entirely well, though but for the injury which she sustained while a passenger on appellant's train, she would have completely recovered, and would have been a stout, strong, and healthy woman thereafter.

Appellant filed a plea in abatement, challenging the jurisdiction of the court on the ground that at the time appellee received the injuries she resided in the city of Graham,

Young county, Tex., and that the injuries alleged to have been received by her occurred in the county of Tarrant, and that said county of Tarrant was the county where the alleged cause of action arose; that at the time plaintiff's original petition was filed, to wit, July 6, 1918, appellant's line of railroad and all of its rolling stock were in the possession of the President of the United States, under authority of the acts of Congress, and same was being operated and controlled by the President by and through W. G. McAdoo, as Director General of Railroads, appointed and acting under the authority of an act of Congress, and that the said Director General had made and published his General Order No. 18a, directed and commanded "that all suits against carriers while under federal control must be brought in the county or district where plaintiff resided at the time of the accrual of the cause of action, or in the county or district where the cause of action arose"; that the proper jurisdiction of the cause under said order was either in Young county, at the place of plaintiff's residence at the time of the accident, or in Tarrant county, where the cause of action arose. After hearing said plea in abatement and the evidence introduced thereon, the court overruled the same, to which action of the court appellant excepted. Subject to its plea in abatement appellant answered, excepting generally and specially to plaintiff's petition, pleaded a general denial, and specially that the diseased condition of appellee which required the second operation alleged by her was the result of natural diseases and other causes, and that at the time of her alleged injuries she had only recently had a very serious operation, which was performed for the purpose of remedying the diseased condition of her female organs, and that at the time she became a passenger on appellant's train she was in a very weakened physical condition as a result of her first operation and her former sickness and disease, and that she was negligent in undertaking the trip at the time and under the circumstances. Appellant further pleaded that appellee was negligent in attempting to make the trip too soon after her operation; in leaving her seat and going into the dressing room at a time when the train in which she was riding was approaching her destination, and when she knew that, in the usual and ordinary movement of the train in approaching the tracks and in stopping and starting for crossings in the yards and in passing over other tracks, there would be more jars and uneven movements of the train than would be experienced while said train was running on a smooth and straight track; that notwithstanding such knowledge appellee left her seat and went into the ladies' toilet, and remained standing in such a position as to likely cause her in her weakened physical condition to be thrown about and injured; that she was careless in standing in such a position that her body was not properly braced to prevent it from being thrown about, and was careless in not steadying herself and holding to the handholds, provided for that purpose, all of which caused, or contributed to cause, her alleged injuries. The court overruled defendant's exceptions. When the case came on for trial appellant made application for a continuance on the ground of the absence of the witness, J. H. Hall, who was engineer on the train at the time of the alleged injury, which application was also overruled. The case was tried before a jury under the general issue, and on June 24, 1919, the jury returned a verdict in favor of appellee, for $7,500, and judgment was entered in accordance with the verdict. Appellant filed motion for a new trial, setting up, among other things, "newly discovered evidence." This motion was heard by the court, and evidence submitted on the issues raised with reference to the alleged newly discovered evidence. The motion was overruled, and appellant prosecuted an appeal to this court.

The first question presented is-whether or not the court erred in overruling appellant's plea in abatement challenging the jurisdiction of the court on the ground that at the time appellee alleges she received the injury of which she complains she was a resident of Young county, Tex., and the alleged injury occurred in Tarrant county, Tex. The basis for the plea in abatement is that at the time the appellee brought this suit the appellant was in the hands of the federal government and under its control, and by its order the suit should have been brought, either in the county where the alleged cause of action arose or in the county of the appellee's residence.

[1] There was no error in overruling appellant's plea in abatement. Section 10 of the act of March 21, 1918, c. 25, Fed. Stats. Ann., 1918, p. 762, provides (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j):

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President"

—and declares that:

"Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law," etc.

On the date of the enactment of this statute by Congress, the law authorized the institution and maintenance of this suit in the district court of Hunt county. The orders referred to in appellant's plea in abatement are General Orders 18 and 18a of the Director

General of Railroads, and our Supreme Court and other courts hold that, in so far as the terms of said orders undertook to restrict the rights granted by Congress to maintain a suit in any court of competent jurisdiction, they were invalid, and could not be upheld. El Paso & S. W. Ry. Co. v. Lovick (Sup.) 218 S. W. 489; Postal Telegraph Cable Co. v. Call, 255 Fed. 851, 167 C. C. A. 179; Haubert v. B. & O. Ry. Co. (D. C.) 259 Fed. 363.

[2] Appellant's next contention is that the court erred in overruling its application for a continuance based upon the absence of the witness J. W. Hall. We are not prepared to hold there was reversible error in this ruling of the court. The bill of exception was qualified by the court as follows:

"This case had been set for trial and called on a former day of the term, at which time the witness Hall was not in attendance, and, defendant having applied for a continuance on account of his absence, the case was reset for a later day, giving sufficient time to take his deposition."

Thus it is made to appear that a previous application for a continuance on account of the absence of the witness Hall had been made by the appellant and the cause postponed to get his testimony, and that a sufficient length of time had elapsed from the date of such postponement to the date the case was again called for trial, to take the deposition of the witness. The suit was filed July 6, 1918, and was not tried until June 24, 1919. It does not appear that any effort was made to take Hall's deposition, and no claim is made that any such effort was made. The showing made to the effect that he was unable to testify by deposition is not sufficient, especially in view of the trial court's action in the matter, to justify the holding by this court that the application for a continuance should have been granted. The application was sworn to by appellant's claim agent, L. F. Stacy, who testified that he knew Mr. Hall was asked for as a witness in the case, and knew that the surgeon was consulted as to the ability of Mr. Hall to attend court, and that he was unable to attend. He further testified:

"Said witness is not only unable to attend in person and to give his testimony herein, but that in the opinion of affiant, said witness is mentally unable and incapacitated to testify fully and clearly by deposition herein as to the facts known by him as hereinabove set out and stated, and has been since the 9th of June, 1919."

[3] It does not appear, however, that the "surgeon," or any other person qualified to know the facts, was consulted as to whether or not the witness was unable to testify by deposition, and no evidence, except the statement of the witness Stacy, made in the application for a continuance, to effect that in his opinion Mr. Hall was "incapacitated to testify fully and clearly by deposition herein as to the facts known by him," appears to have been offered. It seems that the witness did not live in Hunt county, where the suit was pending, and the application for a continuance, not being a statutory one, was addressed to the sound discretion of the trial court, and it cannot be said, under the circumstances shown, that the overruling thereof was an abuse of that discretion. Railway Co. v. McCune, 154 S. W. 237; Railway Co. v. Hardin, 62 Tex. 367; Railway Co. v. Wells, 146 S. W. 645.

[4] The appellee, over the objection of appellant, was permitted, after she had stated that a surgical operation had been performed on her, to testify that her appendix and right ovary were removed in the operation. On cross-examination she said that she was under the influence of an anæsthetic when the operation was performed, and did not know of her own personal knowledge what the operation embraced; that she did not know what the doctor took out of her body of her own personal knowledge, but that he told her he removed her appendix and right ovary. Thereupon the appellant moved to exclude the testimony, and the motion was overruled. These rulings of the court are complained of and made the basis of appellant's third and fourth assignments of error. Conceding for the purposes of this appeal that the testimony was hearsay and therefore inadmissible, we do not think the error, in view of the record before us, of such character as to require a reversal of the case. The admission of the testimony was evidently harmless, for the reason, as is contended by appellee, that the facts testified to were proved by appellant itself on the direct examination of its witness, Dr. Will Cantrell, and testified to without objection by the witness Mrs. W. L. Oler. Dr. Cantrell said:

"I opened her abdomen in the middle and found that her womb was misplaced, and I fixed that by fastening the round ligaments up. I also removed one ovary. She had a cystic ovary, and I removed that, and I also removed her appendix."

Mrs. Oler testified:

"The first operation consisted of taking out one of the ovaries and the appendix; that is all I remember that was taken out at the first operation."

[5, 6] The fifth assignment of error is that:

"The court erred in overruling defendant's objection to the introduction of the testimony of plaintiff in giving her reason why she had not stated to any of her physicians anything about the alleged injury, which testimony was objected to by defendant on the ground that same was irrelevant and immaterial, privilege matter, and self-serving."

It appears that appellee had testified on cross-examination by appellant's attorneys

that two or three physicians had examined and treated her, and that she had not said anything to either of them about the accident and injury of which she complains, that appellee's counsel on redirect examination asked her to give her reason for not telling said physicians about having received the injury, and that, over the objections of appellant's counsel that the question was irrelevant, immaterial, and called for matter that was self-serving and prejudicial, appellee was permitted to answer as follows:

"One reason is I never like to have a lawsuit and another reason is that my husband was a railroad man and I felt that I wanted to deal justly and did not want to have a lawsuit, and I felt that if I could take treatments and get along without a lawsuit, I would do so."

Appellant having elicited on cross-examination of appellee that she had failed to tell certain physicians who had treated her about having received the injury alleged to have been inflicted upon her as the result of its negligence, the testimony in question was, we think, admissible. Appellant evidently drew out the fact that appellee had not told the physicians called to examine and treat her, shortly after the accident, about the injury received, to discredit her, and manifestly the question objected to was designed to show her reasons, if she had any, for failing to disclose the fact to these physicians. Mr. Jones, in his work on Evidence (2d Ed.) § 171, says:

"In determining whether questions are relevant or not, the judge should take into consideration, not only the issues as shown by the pleadings, but also the line of proof which has been resorted to by the respective parties. Testimony which would be clearly irrelevant or incompetent, if offered by one party in the first instance, may become very pertinent in rebuttal or explanation of evidence offered by the adversary."

After giving some illustrations of the applicability of the rule, he further says:

"On the same general principle, where testimony is adduced against a party which tends to raise an inference of some improper motive or conduct, or when some act is shown which might be deemed prejudicial to his case, it may be relevant and important for him to give an explanation which might otherwise be clearly inadmissible."

But it occurs to us that the answer of the witness, which has been quoted above, amounted to little, if anything, and was therefore harmless. Appellee testified that about two weeks after the accident and injury of which she complains she gave Dr. Will Cantrell, appellant's surgeon, who conducted a sanitarium at the city of Greenville, Hunt county, Tex., a complete history of her case, and in this she was corroborated by Dr. Cantrell.

[7] The next assignment of error challenges the correctness of the court's ruling permitting the witness Dr. Will Cantrell, over appellant's objection, to testify as to the contents of a letter which appellee had written him. The objections urged to the admission were that the letter itself was the best evidence, and no sufficient predicate had been laid for the introduction of secondary evidence of its contents; that the testimony allowed was self-serving and hearsay. We conclude that there was no error in the action of the court. The predicate laid was, in our opinion, sufficient to authorize the introduction of the testimony in question. The witness, Dr. Cantrell testified, in effect, that appellee communicated with him shortly after she reached her home after the accident in which she was injured; that he did not have the letter she wrote him, and that he did not know where it was; that he had not made a search for it because he does not keep letters, and it was probably destroyed. The witness was not called to testify until a little over two years after the letter was written, and it is a fair and reasonable inference from his statement that he "does not keep letters" that a search for it would have been fruitless. The rule requiring the production of the best evidence has its qualifications and limitations, and so it has been said that the rule is satisfied "if the best obtainable evidence is produced," and that the determination of its sufficiency must be left largely to the discretion of the court. It is further said that—

"A search for documents is not necessary where, from the nature of the case, it is evident that it would be unavailing; that if there is no ground for suspicion as to the existence of the writing or that it is designedly withheld, all that should be required is a reasonably diligent search for the original. If, on the other hand, the document is only of transitory interest or little value, as, for instance, an envelope, a newspaper, or such private letters as are not usually preserved, very slight evidence may suffice, as in such case the loss would be very readily inferred." Jones on Evidence (2d Ed.) §§ 213–215.

The seventh, eighth, ninth, and tenth assignments of error complain, respectively, of the court's refusal to give certain special charges requested by appellant presenting its theory of contributory negligence on the part of appellee. In disposing of these several assignments we deem it unnecessary, since it is voluminous, and will, in our opinion, serve no useful purpose to detail the testimony relied on to sustain this alleged defense. It is sufficient to say that a careful examination of all the evidence bearing upon the question has convinced us that it was wholly insufficient to authorize the submission of contributory negligence as an issuable fact, and that therefore the trial

court properly refused to give said charges.

The next and last question for decision is whether or not the trial court committed reversible error in refusing to grant the appellant a new trial because of the newly discovered evidence set out in its motion therefor. It is alleged, in substance, that since the trial of this case the appellant has discovered that before the trial thereof and on, to wit, the 8th day of January, 1919, the appellee made application for life insurance, and in said application she stated that she had not lost weight; that she was in sound physical condition and in good health; that she had never had any injury, was not suffering, and never had been afflicted with any disorder of her nervous system. It is alleged that appellant did not know that appellee had made the application in question, or had made the statements contained therein, until after the trial of this case, when appellant's attorneys who represented it on the trial hereof were informed of said fact by one of the agents of the insurance company, as shown by the affidavit of L. B. Stacy; that said newly discovered evidence is material on the issue of the nature, extent, and duration of appellee's alleged injuries and as affecting her credibility as a witness, having testified in the trial of this case that she had suffered pain, weakness, and nervousness from the date of her alleged injury up to the time of the trial, and that she had lost weight, contrary to the statements made by her in said application for life insurance. It is further alleged that since the trial of this case the appellant has discovered that the appellee in making the application for life insurance referred to was examined by Dr. J. H. French, and in said examination Dr. French found appellee in good physical condition, and that she then stated to Dr. French that she had been operated on, but had fully recovered, and was at that time sound and healthy; that from the examination made of appellee by Dr. French he found nothing to indicate that she was not in a sound and healthy condition, and passed her and recommended her as a suitable risk for life insurance; that the testimony of Dr. French is material, in that it would contradict the testimony of appellee, wherein she testified that since her operation over a year before the trial of the case she had been suffering with pain, nervousness, weakness, and loss of flesh.

[8-10] The matter of granting new trials on the ground of newly discovered evidence is largely confided to the discretion of the trial judge, and, unless an abuse of discretion is clearly shown, the appellate courts will not revise his action. Does it clearly appear in this case that the trial court abused its discretion in refusing to grant appellant a new trial? We think not. Whether appellant could have discovered the alleged newly discovered evidence before the trial by the exercise of proper diligence was a question of fact for the decision of the trial court, and, in view of the evidence bearing upon that issue, we are not prepared to hold that it clearly appears that the issue was not correctly decided. One of appellant's attorneys testified that he did not learn of the existence of the evidence claimed to be newly discovered until two or three days after the trial of the case; that Joe Shelton, who lived at Greenville, where the suit was pending, came to his office and informed him of it. Appellant's assistant claim agent testified by affidavit that the first information he received about the matter was after the trial from Dr. J. H. French, and then from W. S. Blake. It appears without dispute that W. S. Blake was agent for the insurance company to whom the appellee applied for life insurance; that Dr. J. H. French made the medical examination of her to secure the insurance; and that both Mr. Blake and Dr. French were citizens of Greenville. Joe Shelton, who appellant's counsel says informed him of the newly discovered evidence, and who, it seems, was in no way connected with or interested in this case, knew that appellee had made application for the insurance, and it was not shown that any investigation whatever had been made prior to the trial to ascertain whether or not appellee had made application for life insurance anywhere. The appellee contested the motion for new trial, and supported the contest by affidavit of herself. In this contest, it is shown that appellee was at her residence at the time Dr. French came to make the examination; that he asked her a very few questions; that the entire application, with the exception of the signature, is in the handwriting of Dr. French; that she read no part of the printed matter, and no part of it was read to her; that only a few answers were filled in by the doctor while at her house; that she signed the blank, as directed by Dr. French, and that he filled in most of the answers afterwards; that her suit, showing her injuries, was then pending in the courthouse, just across the square from Dr. French's office, and that the case was soon to be tried; that many of the answers, as they appear in the application, were not made by her at all; that Dr. French did not ask her if she had been operated on because of any injury, and that she did not purposely withhold any information from him; that Dr. French did not ask her any question about her nervous condition, and she made no statement in regard to her nervous condition; that she did not tell Dr. French she was sound and healthy; that she did tell him she was in reasonably good health as compared to what it was before the operation; and that as soon as she found out that the application failed to state the facts correctly, she wrote a full statement to the president of the insurance association, and offered to surrender the certificate. It

further appears that Dr. French testified at the instance of appellant, in support of a motion for a new trial, and admitted most, if not all, of the facts stated in appellee's affidavit supporting the contest. He admits that he filled in all of the answers in the alleged application for insurance, and that nearly all of them were made without any basis whatever in fact. Among other things, Dr. French said:

"I did not make any examination of her urine. I stated in the application that I had made an examination of her urine; gave the specific gravity of it. I said there was no albumen in it, and said I had used the acid test in making the examination. I said there was no sugar in it, and in answer to the question as to whether I had personally examined the urine, I said I had. In answer to the question whether I knew that the urine examined was voided by the applicant, I answered yes. Those statements were not true."

[11, 12] It has been uniformly held in this state that judgments will not be reversed on the ground of newly discovered evidence, unless it is made to appear that it has come to the knowledge of the appellant since the trial; that it could not have been sooner discovered by the exercise of diligence; that it is not merely cumulative; that it is not for the purposes of impeachment; and that it is so material that it would probably produce a different verdict on another trial. Appellant claims in its motion for a new trial that the application made by the appellee is material on the issue of the "nature, extent, and duration of appellee's injuries," and as affecting her credibility as a witness, and that the testimony of Dr. French is material, in that it would contradict the testimony of appellee, wherein she testified that since her operation she had been suffering with pain, nervousness, weakness, and loss of flesh. We would not be warranted in setting aside the verdict and judgment to enable appellant to secure the alleged newly discovered evidence, on another trial, to be used either as affecting her credibility or upon the issue of the nature and extent of her injuries. There is no complaint that the verdict is excessive, and, as we have indicated, a new trial will not be granted on the ground of newly discovered evidence if the purpose of such evidence is simply to impeach or discredit the witness. Besides, it is clear to our minds that in deciding the contest of appellant's application for a new trial the trial court was authorized to conclude that the alleged newly discovered evidence would not likely produce a different result if introduced on another trial of the case. Indeed, it occurs to us that in view of certain uncontroverted testimony of the appellee and of the oral testimony of Dr. French himself the newly discovered evi-

dence for which a new trial was asked would be of little or no value to appellant on another trial.

The evidence adduced supports the judgment; and, since we are of the opinion that the record discloses no reversible error, it will be affirmed.

Affirmed.