## J. LEE VILBIG & CO. v. LUCAS et al.
### (No. 10458.)

Court of Civil Appeals of Texas. Dallas.
Dec. 14, 1929.

Rehearing Denied Jan. 11, 1930.

Wm. M. Cramer and Robert M. Perry, both of Dallas, for appellant.

Carden, Starling, Carden & Hemphill, T. D. Gresham, R. S. Shapard, and Touchstone, Wight, Gormley & Price, all of Dallas, for appellees.

JONES, C. J.  In a suit in a district court in Dallas county, instituted by Mrs. Sara Lucas, surviving wife of Charles Lucas, deceased, against appellant, J. Lee Vilbig & Company, a corporation, and appellee, Texas & Pacific Railway Company, to recover damages for herself and other alleged statutory beneficiaries, a judgment was rendered in her favor, as temporary administratrix of the estate of Charles Lucas, deceased, in the sum of $10,000, and in favor of the Texas & Pacific Railway Company, both as to appellee's suit and as to appellant's cross-action over against said railway company.  The judgment was apportioned $8,000 to the widow, Mrs. Sara Lucas, and $2,000 to Forrest Lucas, a minor son.  Appellant has duly prosecuted an ap-

peal to this court, and Mrs. Lucas has duly presented cross-assignments of error against her co-appellee, the railway company. Hereafter Mrs. Sara Lucas will be designated as appellee and the Texas & Pacific Railway Company as railway company. The other alleged beneficiaries, who were adults, were given no part of the recovery, and have not appealed. The following is a sufficient statement of the case for an understanding of the issues discussed.

The deceased, Charles Lucas, was an employee of the railway company in the capacity of switchman. Appellant is a corporation. and operates trucks on the streets of the city of Dallas. Appellee is the surviving wife of deceased, and Forrest Lucas is a minor son. On September 14, 1926, deceased was a member of a switching crew working for the railway company, and on the occasion in question such switching crew was engaged in switching on a track of the railway company that crossed Ross avenue in the city of Dallas and moved the switch engine and tender north across Ross avenue for the purpose of getting a box car and moving it back across Ross avenue. As the engine crossed Ross avenue going north, to hook on to the box car, deceased, in pursuance of his duties, alighted from the pilot of the engine in order to "flag" traffic on the avenue, when the engine should recross Ross avenue from the south. As the engine was returning, with the tender in front, and before it reached the north line of Ross avenue, a truck loaded with gravel, owned by appellant and operated by one of its employees, approached the track on Ross avenue from the west, with the intention of crossing over same on which the switch engine was being operated. As this engine was backing toward Ross avenue, and before it reached the north line of Ross avenue, the driver of the truck and others attempting to use this avenue in that vicinity were flagged by the deceased by his waiving his hands for them to stop, and indicated thereby that the engine was going to cross said avenue. When the traffic had been thus flagged and the rear of the tender, which was the front of the train being operated by the switching crew, had reached or just passed into the avenue from the south, deceased stepped on the front board of said tender, and the collision almost immediately occurred between the truck and the engine tender, in which collision deceased received injuries causing his death. The tender had passed just beyond the center of the avenue when it collided with the truck. The driver of the truck did not obey the "stop" signal given by deceased, but proceeded east with his truck. The operatives of the engine were given no signal to stop the engine as it approached Ross avenue. There were obstructions to the view of both the engineer and the fireman, as well as obstructions to the view of the driver of the truck, in reference to the one seeing the other. It was the duty of the operatives of the engine to take signals from deceased, and to operate their engine in accordance with such signals.

Various grounds of negligence are alleged by appellee, both against appellant and against the railway company, as a proximate cause of the death of deceased. These allegations of negligence, as against appellant, were each supported by substantial evidence and submitted to the jury in the form of special issues. The grounds of negligence alleged against the railway company also were submitted to the jury in the same manner. As the findings of the jury, in reference to the issues of negligence submitted as to each alleged wrongdoer, are supported by evidence, we adopt such findings as the findings of this court.

Appellant's answer alleged various defensive matters that will be hereafter discussed. Its pleadings are a sufficient basis for all of the issues raised in its assignments of error. The cross-assignments of error, as well as the pleadings of appellee on which they are based, are sufficient to raise the issues on the questions here discussed.

While there are a great many assignments of error urged by appellant, we have concluded that there are only two that seriously challenge the attention of this court. These are: (a) Was deceased, as a matter of law, guilty of contributory negligence; and (b) did the court err in refusing, over the timely objection of appellant, to define the term "new or intervening cause," used by the court in a definition of "proximate cause."

The verdict of the jury on the special issues submitted is made the basis of the judgment against appellant. Numbered as the special issues appear in the court's charge, this verdict is: (1) That the driver of appellant's truck was guilty of negligence in respect to the speed of the truck on the occasion of the death of deceased; (2) that such negligence was a proximate cause of deceased's death; (3) that the driver of the truck was negligent in respect to keeping a lookout for deceased at the time the truck approached and traveled to the place where deceased was killed; (4) that such negligence was a proximate cause of the death of deceased; (5) that the deceased gave a "stop" signal to the driver of the truck while it was traveling toward the place of the collision; (6) that the driver of the truck saw the signal given by deceased; (7) that the driver of the truck was negligent in failing to see such signal by deceased; (8) that such negligence was a proximate cause of deceased's death; (9) that the driver of the truck was negligent in not stopping the truck before it reached the point where the body of deceased would come in contact with it; (10) that such negligence was a proximate cause of the death of deceased; (11) that the driver of the truck was negligent in respect to keeping a lookout for the approaching tender at a time while the

truck was traveling toward the place of the collision; (12) that such negligence was a proximate cause of the death of deceased; (13) that the driver of the truck was negligent in not steering and guiding the truck so as to avoid the death of deceased; (14) that such negligence was a proximate cause of the death of deceased; (15) that the driver of the truck was negligent in not giving some warning to deceased that he would cross ahead of the tender; (16) that such negligence was a proximate cause of the death of deceased.

On the issues of negligence of deceased, the verdict is: (25) That the deceased did not fail to keep a proper lookout for traffic; (28) that deceased did not fail to properly warn traffic of the approach of the switch engine in question; (34) that an ordinarily prudent person, under the same or similar circumstances, would have stepped upon the step of the switch engine at the time and in the manner in which deceased stepped thereon on the occasion in question; (36) that deceased failed to give a stop signal to the engineer of the switch engine upon the occasion in question; (37) that such failure was not negligence on the part of deceased; (39) that deceased gave a "come on" signal to the engineer of the switch engine on the occasion in question; (40) that the giving of such signal was not negligence on the part of deceased; (45) that deceased did not fail to keep a proper lookout for his own safety on the occasion in question; (50) that, as between deceased and appellant, the death of deceased was not the result of an unavoidable accident.

On its theory that the deceased was guilty of contributory negligence, as a matter of law, appellant presented a motion to the court to give peremptory instructions in its favor. While this motion shows on its face to have been presented at the time appellee rested her case, still it affirmatively appears that it was not acted upon by the trial court until the evidence was closed. In addition to this, appellant objected to the submission of the affirmative issues of negligence given to the jury in the court's charge, on the ground that appellee was guilty of contributory negligence as a matter of law. We conclude, over appellee's objection, that the assignments of error on this issue should be considered.

A fair epitome of the evidence upon which the foregoing findings of the jury, in reference to the negligence of appellant and the non-existence of negligence of deceased, though disputed by other evidence, is: That deceased was placed at the crossing of the railway track on Ross avenue to flag traffic proceeding in either direction on Ross avenue, when the engine should approach such avenue from the north on its return; that at the proper time he did flag such traffic, and that the driver of appellant's truck saw the stop signal given by deceased in time to have stopped the truck before the collision; that, after such stop signal had been received by the truck driver, deceased turned around with his back to the truck driver, and mounted the front step of the moving engine and tender; that the truck driver did not attempt to obey the signal, but proceeded on with his truck, the collision occurred, and deceased's death resulted.

■ Under these facts found by the jury there can be no question but that appellant's truck driver was guilty of negligence on the occasion in question, and that this negligence caused the death of deceased. Nor can there be any question that, if the deceased had not stepped on the footboard of the tender just preceding the collision, his injury and death would not have occurred. The controlling issue then is, under this assignment, Was the act of deceased, in stepping upon said footboard at the time and under the circumstances here detailed, negligence on the part of deceased as a matter of law? Deceased was charged with the duty on the occasion in question of exercising ordinary care for his own safety. He was also charged with the duty, on the particular occasion, of stopping the traffic on Ross avenue in order that the engine, whose movements he was directing, could cross the street with safety to itself and to the traffic using the street. He attempted to discharge this duty by giving to the moving traffic stop signals, and it was after these signals had been given that he stepped upon the front of the moving tender. He had given to the truck driver such a signal, and the jury's conclusion is, as expressed by its finding, that the truck driver had seen such signal. It was after the signal had been received by the truck driver that the deceased turned his back and stepped upon the footboard. The presumption is that deceased relied upon his stop signal being obeyed by the truck driver. If it had been, there would have been no collision.

As there was taken by deceased, immediately preceding the injury, the precaution of giving this stop signal, by which, if obeyed by the truck driver, the collision would have been avoided, the question is narrowed into the single issue as to whether it is the function of a jury to determine if an ordinarily prudent person would have relied on the truck driver obeying the stop signal. The law indulges the presumption that no man will voluntarily do an act that places his own life and the lives of others in danger. This presumption of law is declared because it reflects the conduct of ordinarily prudent persons. This principal of law must be applied to the conduct of deceased on this occasion. In other words, the jury could determine that, as an ordinarily prudent person would have stopped the truck under the circum-

stances, the act of deceased in relying upon the truck driver's doing that which an ordinarily prudent person would have done under similar circumstances was the act of an ordinarily prudent person.

■■ We therefore hold that deceased was not guilty of negligence as a matter of law, and that the finding of the jury on this issue is supported by evidence. All assignments of error in respect to this issue are overruled.

The court defined "proximate cause" in the following language: "By the term proximate cause is meant a cause which in a natural and continuous sequence, unbroken by some new or intervening cause, produces an event, and without which the event would not have occurred, and to be the proximate cause of an event it must have been reasonably anticipated by a person of ordinary prudence that the injury or some similar injury would occur."

Appellant timely objected to the omission in this definition to define the meaning of the expression "new or intervening cause." Under the decision of Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W.(2d) 570, it was error not to define such term, because, by reason of such omission, the definition is defective, and all that is necessary, to save the question, is to call the court's attention to such defect by an objection. Unless it affirmatively appears from the record that such error is harmless, this assignment must be sustained. Is such error shown to be harmless?

■ By the term "new and independent cause," or a phrase of similar import, used in definitions of "proximate cause," is meant the act or omission of a separate and independent agency, which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes, in itself, the immediate cause of such injury. In the instant case, looking at the record most favorable to appellant, the injury causing the death of deceased could have resulted from an act or omission springing from one of three sources, namely: (1) From appellant through the negligent acts or omissions of the driver of its truck; (2) from the negligence of the railway company through the negligent act or omission of one or more of its employees operating the switch engine; (3) through the negligent act or omission of deceased. Appellee charged negligent acts and omissions against appellant and each act or omission so charged was separately submitted in a special issue to the jury. Appellee also charged negligent acts and omissions against the railway company, and each act or omission so charged was separately submitted to the jury. Appellant charged negligent acts or omissions against deceased, and each act or omission so charged was separately submitted to the jury. The jury made findings on all of these issues. It thus appears that every cause that could have contributed to the death of deceased was passed upon by the jury under a specific submission by the court. If any act or omission of the employees of the railway company could have been a "new or intervening cause," destroying the causal connection between the negligent acts or omissions of appellant's truck driver and the death of deceased, such issue was concretely submitted to the jury. If any act or omission of deceased could have destroyed the causal connection between the negligence of the truck driver and the injury to deceased, such issue was concretely submitted to the jury. In our opinion, the conclusion is inescapable that the error of the court, in refusing to define the term "new or intervening cause," is thus rendered harmless.

In the case of Robertson & Mueller v. Holden, supra, as shown in the statement of the case in the opinion of the Court of Civil Appeals, 297 S. W. 237, a different state of facts existed. In the reported case Holden was injured while being transported to a hospital in the ambulance of Robertson & Mueller. At a street intersection, the ambulance and a Ford automobile collided, and the injury resulted. Negligence was predicated alone on the ground that the collision resulted from the negligence of the driver of the ambulance, and the owners of the ambulance were alone made parties defendant. The evidence raised the issue of the collision being caused by the negligence of the driver of the automobile, and that such negligence could have intervened and destroyed the causal connection between the negligence of the ambulance driver and the injury. In other words, in the reported case, the evidence raised the issue of a "new and independent cause" producing the injury, and the error in not defining "new and independent cause" was held to be reversible error. We therefore hold that, while it was error to refuse to define the term "new and intervening cause," such error was harmless.

■ We do not think it was necessary for an intelligent understanding of the definition of "proximate cause" to define other terms used in the charge, which failure is made the basis of other assignments of error.

■■ After appellant's motion for a peremptory instruction had been overruled, it requested a number of special issues, and has duly assigned error on the refusal of the court to give such issues in charge to the jury. A number of these issues were given in substance by the court in the main charge, for which reason it was not error to refuse the requested issues. By others of these issues, appellant sought to have the jury pass upon the question as to whether it was negligence of the railway company not to have a watchman at the crossing, or an automatic bell to ring on the approach to the crossing of one of its trains, or to install a gate at such crossing. As to whether the conditions as to traffic on Ross avenue and as to the use of this

track by the railway company were such as to raise the issue of a duty resting on appellant in this respect, we are not called upon to pass under the undisputed evidence in this case. Such evidence shows that the deceased was placed at such crossing to perform the very duty that would have been performed by any of these safeguards, for which reason it was not error to refuse the requested instruction.

We have carefully read all assignments of error based on the court's refusal of the submission of requested issues not herein discussed, and find them without merit.

A number of assignments of error, based on the objection to the manner in which the special issues were submitted, have been presented as showing reversible error. We have carefully examined all of such assignments of error, and find them without merit.

■■ There are also assignments of error in reference to the ruling of the trial court on the admission of certain evidence and on a refusal to admit certain other evidence. A group of these assignments refer to evidence of witnesses detailing declarations made by the driver of the truck, which would tend to show negligence in the manner in which he operated the truck on the occasion in question. These declarations appear to have been made immediately after the accident, and made under such circumstances as raise a reasonable presumption that they were the spontaneous utterances of thoughts of the driver created by or springing out of the accident itself, and hence were admissible as res gestæ declarations. I. & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Missouri, O. & G. Railway Co. v. Boring (Tex. Civ. App.) 166 S. W. 77; Railway Co. v. Stanfield Bros., 40 Tex. Civ. App. 385, 90 S. W. 517; Railway Co. v. Milner, 28 Tex. Civ. App. 86, 66 S. W. 574; Railway Co. v. Gray, 95 Tex. 424, 67 S. W. 763; Harris v. Allison (Tex. Civ. App.) 11 S.W.(2d) 822. There is another ground that renders the evidence offered competent evidence, even if it were not admissible under the rule of res gestæ. Appellant placed the truck driver on the stand, and on direct examination elicited evidence from him showing that no such statements were made on the occasion. This rendered the evidence admissible as impeaching evidence, and there was no requested charge to limit the evidence to such purpose. We have examined the other assignments of error on this question of the admission of evidence, with the result that we find no merit in them. All assignments of error in respect to the ruling of the court on the admission of evidence are overruled.

■ Appellant has assigned error on the action of the court in overruling its motion for rehearing, because of newly discovered evidence as shown by the affidavit of one Pool, attached to its motion for a new trial, to the effect that deceased, when the engine first crossed Ross avenue, did not alight from the engine, but continued to ride the engine, and was on the engine when it came back and the accident happened. It is not believed that the affidavit attached by appellant's attorney, in reference to the diligence to discover this witness before the trial, is sufficient to show that the court abused its discretion in overruling the motion for a new trial. A photograph was taken of the scene at the accident a short time after its occurrence, and this witness in his affidavit says that he appears in such photograph as one of the bystanders, and that he remained in the city of Dallas from the time of the accident to the time of the trial. The affidavit of said attorney does not show that any search was made for this witness after the photograph was taken, or why such witness was not found. It is well settled that the granting of a motion for a new trial on the ground of newly discovered evidence is within the sound discretion of the trial court, and there must be shown an abuse of such discretion before a higher court will reverse a case on such grounds. St. Louis Southwestern Railway Co. v. Turner (Tex. Civ. App.) 225 S. W. 383, 388; Feagins v. Texas Machinery & Supply Co. (Tex. Civ. App.) 185 S. W. 961. The testimony of this witness, on deceased not leaving the engine, would be in direct contradiction of appellant's witness, Major Davis, and is also in direct contradiction of four or five other witnesses. Under these circumstances, we do not believe there was any abuse of discretion in the action of the trial court in overruling the motion for a new trial, on the ground of newly discovered evidence.

■ Appellee has presented certain cross-assignments of error urging that a judgment in favor of the railway company should be reversed and remanded for another trial against this defendant alone, because of errors pointed out in such assignments. In response to her pleading, appellee requested the court to submit the following issue: "Was the defendant, Texas & Pacific Railway Company, negligent in using a square tender instead of a sloping or wedge tender upon the occasion in question?" The court refused to submit such special issue. We do not think this was error, for the reason that, on the occasion in question, the engine and tender were removed only by signals from deceased, who had been placed at the intersection of the track and Ross avenue for that purpose, and hence any obscurity of the vision of the engineer, by reason of the character of tender in use, was rendered immaterial.

■ The other cross-assignments are leveled against the submission of the issue of unavoidable accident, as between deceased and the railway company, and against the definition given by the court of "unavoidable accident." We do not think these assignments show error; but, if such were the case, they are harmless, for the reason that every issue of negligence pleaded by appellant, as to the

acts or omissions of the engine crew, was specifically submitted to the jury and found by the jury against appellee's contention. The submission of these acts of negligence preceded the submission of the issue of "unavoidable accident," and hence whatever error these assignments point out necessarily became harmless.

We are inclined to agree with the railway company that, under the evidence in this case, the railway company was entitled to the peremptory instructions in its favor, requested at the close of the evidence. The evidence indisputably shows that the movement of the engine and the tender into Ross avenue was made in response to a "come on" signal given by deceased, and that he, at no time, gave to the engineer any other signal. It was the duty of deceased to stop traffic on Ross avenue for the safe passage of the engine, and, when he gave the "come on" signal, the engineer had the right to assume that the traffic had been stopped, and that there was a safe passage for the engine across Ross avenue. We therefore overrule all cross-assignments of error.

In our opinion, no reversible error is shown to have been committed on the trial of this case, and it ought to be affirmed.

Affirmed.