# MAGNOLIA PETROLEUM CO. v. OWEN.

## No. 12060.

Court of Civil Appeals of Texas. Dallas.

Dec. 12, 1936.

Rehearing Denied Jan. 18, 1937.

W. H. Francis, Walace Hawkins, Russell'
Surles, and Roy C. Ledbetter, all of Dallas,
for appellant.

Caldwell, Gillen, Francis & Gallagher, of
Dallas, for appellee.

JONES, Chief Justice.

Appellee, James H. Owen, instituted this
suit in a district court of Dallas county
against appellant, Magnolia Petroleum
Company, to recover damages for personal
injuries received in a collision between the
passenger automobile in which appellee was
riding and a truck owned by appellant and
operated by one of its employees. As the
result of a trial to a jury, judgment was
rendered in favor of appellee for the sum
of $10,000, together with 6 per cent. inter-
est from the date of judgment. Appellant
has duly perfected an appeal to this court,
and the following are the necessary facts:

On July 27, 1933, the occasion in ques-
tion, appellee was riding in a 1931 Chev-
rolet sedan as the guest of Robert May,
owner and operator of the car. May and
appellee were on the front seat and Rush
May, a son of Robert May, a boy about 14
years of age, was in the rear seat. The
parties were traveling west on the portion
of highway No. 80 that extends approxi-
mately east and west between the cities of
San Marcus and Luling. May and his son
had some trot-lines in a river and were
going out to take them up. Appellee was
met on the way and invited by May to ac-
company them. Appellee had no interest
in the trot-lines and no interest in any
fish that might be taken therefrom, but
was riding solely on May's invitation and
as his guest. In Caldwell county, the coun-
ty in which the parties were traveling, is
a small village called "Stairtown," and is

near the middle of a producing oil field, some seven miles in length and approximately 600 yards wide. Highway No. 80 is a state highway and is paved with asphalt, the pavement being about 18 feet wide. As the automobile in which appellee was riding came into Stairtown, it passed Carey's Store, which faces on highway No. 80. About 200 feet west from Carey's Store is the other store in Stairtown; it is known as Elam's Store, although at the time in question it was owned by R. C. Fortune, who, with his family lived in the rear of the store. This latter store is at the place where highway No. 80 is crossed by what is described as the "oil field road," which was called a dirt road, but appears to have had gravel on its surface. The road runs approximately north and south, and intersects highway No. 80 at right angles.

About 5:15 p.m. on the day in question, the car in which appellee was riding approached the intersection of the highway traveling west, and at the same time the driver of appellee's truck approached the intersection traveling south on the oil field road. May, driver of the automobile, entered the intersection before the driver of the truck reached the intersection. Both cars continued on their course, with the result that the truck collided with the automobile, the front of the truck striking the right rear fender and the right rear wheel, with the result that the automobile turned over some little distance from the collision, seriously and permanently injuring appellee, who was hurled from the car. The truck did not travel very far after the collision. The automobile was badly wrecked. May, driver of the automobile, and Rush May the minor son, appeared to have escaped injuries, except for some minor cuts and abrasions.

The evidence as to the speed of both cars is in sharp conflict, appellant's evidence tending to show that the automobile was being operated at a high rate of speed, one witness placing the speed at the rate of 50 to 60 miles per hour; and that the truck was not being operated at a dangerous rate of speed, one witness placing the rate of speed as low as five miles per hour. The operator testified that the truck was equipped with a governor and was set for 27 miles per hour, and could not be operated at a greater speed.

On the other hand, appellee's evidence, as shown by several witnesses, is to the effect that, when the automobile had reached Carey's Store, 200 feet from the intersection of the highway, his car was being operated at about 35 miles per hour, at such place slowed down, and before it entered the crossing its speed was from 20 to 25 miles per hour; that the truck, as it approached the crossing, was being operated at a rate of speed from 40 to 50 miles per hour, and that its speed was not checked prior to the time of the collision.

The testimony of May is that he was operating the automobile at 25 miles per hour just before he entered the crossing, but that, when he saw the truck approaching the intersection at about 40 miles per hour and realized that a collision was imminent, he swerved his car to the left, which would be to the south and away from the on-coming truck, and believing the only chance of avoiding a collision was to cross the path of the truck before it reached him, he increased the rate of the speed of the car in such effort. The evidence offered by appellee is, that the truck never swerved from its course, but traveled in a straight line to the point of collision.

The respective speeds at which the cars were being operated, therefore, became a sharply contested issue, which could only be settled by the verdict of a jury. The jury, as shown by its findings, adopted the evidence of appellee, and rejected the evidence of appellant on the issue of speed, and the finding of the jury in this respect is binding on this court.

The case was tried to a jury, submitted on special issues, and a verdict returned in response to such special issues. The court, in the general charge submitted to the jury, correctly defined the terms, used in the charge, "ordinary care," "negligence," "proper lookout," "course of employment," "position of peril," and "unavoidable accident." The court defined the term "proximate cause" in the following language: "By the term 'proximate cause', as used in this charge, is meant the efficient and procuring cause, but for which, the injury would not have happened, and which could have been reasonably foreseen as causing the injury complained of, or some similar injury. There may be more than one proximate cause."

The pleadings of the plaintiff are full and complete, alleging all of the acts of negligence submitted by the court in the charge. The pleadings of the defendant likewise are full and complete in alleging its several grounds of defense. The findings of the jury disclose the acts of negli-

gence pleaded by appellee and the grounds of defense pleaded by appellant.

The following is a summary of the findings of the jury: (1) Appellant's employee was operating a Ford truck on the occasion in question in the course of his employment with appellant; (2) immediately prior to the collision, the Ford truck was being operated at a rate of speed in excess of 20 miles per hour, and (3) such rate of speed was a proximate cause of the collision; (4) immediately prior to the collision the Ford truck was being driven at a greater rate of speed than a person of ordinary prudence would have driven same, and (5) such negligence as to speed was a proximate cause of the collision; (6) the driver of the Ford truck on the occasion in question failed to keep a proper lookout for the automobile driven by Robert May, who approached said crossing; (7) such failure was negligence, and (8) a proximate cause of the collision; (9) May's automobile on the occasion in question entered the intersection before appellant's truck entered same; (10) the driver of appellant's truck failed to yield the right of way to May's automobile; (11) such failure was negligence, and (12) a proximate cause of the collision in question; (13) the driver of appellant's truck failed to stop before entering the intersection of the highway, and such failure was negligence, and (14) such negligence a proximate cause of the collision; (15) the driver of appellant's truck failed to slacken its speed immediately before entering the intersection; (16) immediately before said collision appellee did not occupy a position of peril; (17) the collision in question was not an unavoidable accident; (18) the failure of the driver of appellant's truck to sound his horn before entering the intersection was negligence, and (19) such negligence was a proximate cause of the collision; (20) R. S. May, on the occasion in question drove his automobile in the village of Stairtown at a rate of speed exceeding 20 miles an hour, and (21) such rate of speed was not the sole proximate cause of the collision; (22) just prior to and at the time of the collision, R. S. May drove his car at the rate of 35 miles per hour; (23) the driving at such rate of speed was not negligence; (24) the failure of R. S. May to put on his brakes at the time and on the occasion in question was not negligence; (25) R. S. May did not fail to slow down his car on the occasion in question; (26) R. S. May speeded up his car on the occasion in question, in an effort to beat appellant's truck across the road, but (27) such speeding up on the part of R. S. May was not negligence; (28) R. S. May did not fail to keep his car under control on the occasion in question; (29) R. S. May failed to keep a proper lookout for appellant's truck on the occasion in question, and (30) such failure on the part of May was negligence, (31) but it was not the sole proximate cause of the collision and the injuries to the appellee; (32) failure of R. S. May to sound his horn at the time and on the occasion in question was negligence, but (33) it was not the sole proximate cause of the collision and appellee's injuries; (34) appellee did not fail to use reasonable care for his own safety by remaining in the May automobile on the occasion in question; (35) appellee did not fail to keep a proper lookout for his own safety on the occasion in question; (36) appellee did not fail to use ordinary care for his own safety by not warning R. S. May to slow down the car prior to the collision; (37) appellee on the occasion in question did not lean his back against the right front door of the car in which he was riding; (38) appellee on the occasion in question did not block the view of R. S. May by sitting forward in the front seat of the May car. The jury assessed appellee's damages at $10,000. All of the foregoing findings are sustained by substantial evidence and are adopted as the findings of this court.

■ Appellant insists, by proper assignments of error, that it was entitled to peremptory instruction in its favor, and that the court erred in overruling such requested instruction. The grounds upon which this assignment is based are: (1) That appellee was guilty of negligence as a matter of law, in remaining in the automobile prior to the collision, without protest to May as to the speed at which the car was being driven; and (2) that the evidence is conclusive that appellee was guilty of negligence, as a matter of law, in his failure to keep a proper lookout as May's car approached and entered the crossing. The statement of the evidence as to speed, heretofore given in this opinion, shows that as to the issues of whether appellee was guilty of negligence, in the matter of keeping a lookout at the time, and as to his remaining in the car without protest to the driver, presented issues of fact for the determination of the jury, and not for the determination of the court. The general rule is that negligence is a fact issue, to be

determined by the jury, and this evidence, when considered as a whole, falls far short of presenting an exception to this rule.

The difficult question in this case, is whether the court's definition of "proximate cause," as given above, is correct under the facts developed at the trial of this case. The definition given in the court's charge is clear and easily understood, and is correct, unless, under the evidence, the definition should have included the element of the intervention of a "new and independent cause." In other words, unless the evidence raised the issue that the collision could have been caused "by the act or omission of a separate and independent agency, which destroyed the causal connection between the negligent act or omission of the appellant and the injuries complained of, and thereby became, in itself, the immediate cause of such injuries."

The acts or omissions of a person charged with negligence, which caused the injury, clearly are not those of an independent agency, nor are the acts or omissions of the persons injured a "new and independent agency"; for the one is the agency procuring the injury, and the other is the agency receiving the injury. The acts or omissions of neither are new and independent causes, as both have a direct bearing upon the right of the injured party to recover.

Every person operating an automobile on a highway is charged with the duty of exercising ordinary care, not only for his own safety, but for the safety of others, who may be using the same highway; his failure to observe such care is negligence, and if an injury is the proximate result of such negligence the injured party, not necessarily, but may recover, for only in the event such injured party did not contribute to cause his injury by a failure to perform the duty resting upon him to observe ordinary care for his own safety, is the right of recovery complete. To the acts or omissions of neither party to a personal injury suit, can be ascribed the operation of a new and independent agency. It must be ascribed to some outside agency, operating to cause the injury. Karotkin Furniture Co. v. Decker (Tex. Com.App.) 50 S.W.(2d) 795; Offer v. Swancoat (Tex.Civ.App.) 27 S.W.(2d) 899; Hughes v. Clark Bros. Co. (Tex.Civ. App.) 63 S.W.(2d) 230; Dixie Motor Coach Corporation v. Galvan (Tex.Com. App.) 86 S.W.(2d) 633; Phœnix Ref. Co. v. Tips, 125 Tex. 69, 81 S.W.(2d) 60;

Houston Belt & T. R. Co. v. Davis (Tex. Civ.App.) 19 S.W.(2d) 77.

In the instant case, it is true that appellee was not operating the automobile in which he was riding, but he was, nevertheless, charged with observing ordinary care for his own safety, and if he failed to do so and thereby was guilty of negligence that proximately contributed to his injury; he could not recover for the injuries he received. Contributory negligence defeats a recovery, not because it destroys the causal connection between the negligent act or omission of the party inflicting the injury, but because of his own wrongful act, in his failure to observe ordinary care for his own safety.

If May, the driver of the car, was guilty of negligence in any of the matters alleged in appellant's answer, and if such negligence was the sole proximate cause of the collision and the resultant injuries to appellee, then appellee could not recover. This, not because the negligent act of May was a new and independent cause, but because his negligent act alone produced the injury. It is well-settled law that, if May's negligence concurred with an act of negligence by the driver of the truck, then appellee could recover; but if May's negligent act should be viewed as a new and independent cause, this would destroy the rule above announced.

So, we conclude that both May and appellee were direct actors in the events that led up to the collision and the injuries of appellee, and their acts or omissions cannot be described as "separate and independent agencies," in other words, neither the negligence of May nor the negligence of appellee constitute a new and independent cause (authorities just above cited).

The evidence excludes any act or omission of an outside party or agency as entering into this case; in fact, appellee contends only that the issue of "new and independent cause" was raised by the alleged negligent acts of May and appellee, and does not contend that any unusual condition existed at the time, or that there were any other vehicles on the highway in the immediate vicinity of the intersection of the two highways.

However, if we be mistaken in this, and the acts or omissions of May and appellee, or either of them, under the facts of this case, may constitute a new and independent cause, then the definition of proximate cause would be erroneous and

would call for the reversal of this case, unless it can be said from this record that such error was harmless. We think that, if error, it is harmless. If the court had included the term "new and independent cause" in the definition of "proximate cause" and had given a proper definition of "new and independent cause," under the evidence of this case, the jury could have looked only to the very acts of negligence of May and appellee, alleged by appellant in its answer, and which alleged acts of negligence were submitted in concrete form to the jury, to determine whether such new and independent cause existed. A defendant in a suit has the right to have every defensive issue pleaded and proven by substantial evidence, submitted to the jury. However, he only has the right of one submission, and if one submission is had, he cannot complain that the same defensive matters were not submitted in another form. The court fairly and concretely submitted to the jury every issue that appellant now claims was a new and independent cause, and these defensive issues were all found in favor of the appellee. While under this view of what may constitute a "new and independent cause" it was error not to include the element of "new and independent cause," in the definition of "proximate cause," such error is harmless; not because of the subsequent findings of the jury, but because appellant had one clear-cut submission of everything that it now contends constituted a new and independent cause. If the jury had found, under a proper submission, that there was such new and independent cause, the result would have been to defeat appellee's recovery; also, if the jury had found on one concrete submission of the negligence of May and appellee, which appellant claims was a new and independent cause in favor of appellant, such finding would likewise have defeated appellee's recovery. J. Lee Vilbig & Co. v. Lucas (Tex.Cix.App.) 23 S.W.(2d) 516; Houston Belt & T. R. Co. v. Davis (Tex.Civ.App.) 19 S.W.(2d) 77; Williams v. Rodocker (Tex.Civ.App.) 84 S.W.(2d) 556.

So, we conclude, first, that the issue of new and independent cause was not raised by the evidence, and that the definition of proximate cause, which omitted the element of new and independent cause, was correct, but if mistaken in this, then the omission of the element of new and independent cause from the definition was harmless error for the reason above given.

Appellant, in its answer, alleged that appellee and May were on a joint enterprise at the time of the collision, in that they were going on a fishing expedition to the river and intended to divide the fish between them, and that the case is ruled by the law applicable to parties using a car in a joint enterprise, and not by the rule of law applicable to a guest of the one driving the car, as applied in this case. The allegation of joint enterprise is not sustained by the evidence. The evidence of May is that, after he got off from work, he and his son Rush started in his car together down to the river to pick up a trot-line, which had been set out the day before; that they were accompanied by May's daughter to a neighbor's house, where the daughter got out and, finding appellee at this house, May invited him to accompany him to the river. May testified positively that appellee had no interest in the car, nor in the trot-line, which belonged to May and his son, and that he never told appellee anything about his purpose in going down to the river until after appellee had gotten in the car, and they were on their way. Appellee testified to the same effect, and further stated that after they were on their way to the river and the purpose of their trip was made known, he anticipated that he might be given some of the fish. This does not raise the issue of joint enterprise. El Paso Elec. Co. v. Leeper (Tex.Com.App.) 60 S.W.(2d) 187; West v. Bruns (Tex.Civ.App.) 294 S.W. 235; Central Texas & N. W. Ry. Co. v. Gibson (Tex.Civ.App.) 83 S.W. 862; Offer v. Swancoat (Tex.Civ.App.) 27 S.W.(2d) 899.

Over appellant's objection, appellee was permitted to prove by May that a few weeks after the wreck he was paid by appellant the sum of $649.38 for injuries to his automobile, and the personal injuries received by himself and his son, and that he executed a complete release in consideration of such payment. It is not shown that this was a compromise settlement, but, on the other hand, it is fairly inferable from the evidence that this was a payment of the damages demanded by May. The amount paid was the cost of a new Chevrolet car, which was bought and delivered to May. The reception of such evidence, under such condition, was not error.

Appellant had pleaded as a defense that appellee's injuries resulted solely from the negligence of May, and did not result from

the negligence of its truck driver. This evidence of the May settlement tended to show an admission of liability on the part of appellant, for the reason that it offered no explanation of the payment made to May. Morton Salt Co. v. Keele (Tex.Civ. App.) 293 S.W. 224; Thweatt v. Ocean Acc. & Guar. Corp. (Tex.Civ.App.) 62 S. W.(2d) 250; St. Louis, S. F. & T. Ry. Co. v. Thomas (Tex.Civ.App.) 167 S.W. 784; Harris v. Allison (Tex.Civ.App.) 11 S.W. (2d) 821; Texas & N. O. Ry. Co. v. Commercial Union Assurance Co. (Tex.Civ. App.) 137 S.W. 401; Missouri, K. & T. Ry. Co. v. Kellerman, 39 Tex.Civ.App. 274, 87 S.W. 401; Galveston, H. & S. A. Ry. Co. v. Hertzig, 3 Tex.Civ.App. 296, 22 S.W. 1013.

We have examined all other assignments of error, with the result that we do not think that any of them show reversible error. It follows that, in our opinion, this case should be affirmed, and it is so ordered.

Affirmed.