**FORT WORTH BELT RY. CO. v. DAVIS et ux.  (No. 2753.)\***

(Court of Civil Appeals of Texas. Texarkana. May 30, 1923. Rehearing Denied June 14, 1923.)

1. **Damages** &#x25C0;&#x2550;216(2) — **Instruction held not error as outside pleading or evidence.**

In an action for personal injuries, an instruction referring to elements jury could consider in determining damages *held* not erroneous under the pleading or evidence as authorizing jury to consider injuries not alleged or proved.

2. **Appeal and error** &#x25C0;&#x2550;1033(6)—**Refusal to give instruction authorizing jury not to make allowance for permanent injuries held not reversible error, if erroneous.**

Refusal to give defendant's requested instruction authorizing jury not to allow any sum for alleged permanent injuries to plaintiff's sides, back, hips, and lower limbs, *held* not error of which defendant could complain, where

the court, in the instruction given, did not mention "permanent injuries," but authorized the jury to consider only physical pain and mental suffering, since giving the requested instruction might have suggested other injuries which were permanent.

**3. New trial ⊚═44(4) — Refusal to grant new trial for misconduct of jury held not abuse of discretion.**

In refusing to grant new trial for misconduct of jurors in disclosing what they had individually seen at the place of the accident, trial court *held* not to have abused its discretion, in view of showing made that the misconduct did not affect the verdict.

**4. Railroads ⊚═350(21) — Contributory negligence of occupant of automobile held for jury.**

Where defendant, recognizing that its bell at a crossing could not be depended on to warn persons of approaching trains, hired a flagman to give warnings, plaintiff, guest of automobile driver, *held* not guilty of negligence as a matter of law in assuming, when flagman did not give warning, that a train was not moving to the crossing, notwithstanding the bell was ringing.

**5. Railroads ⊚═327(8) — Travelers held not negligent in failing to look and listen.**

Where the driver and occupant of an automobile could have seen the approaching train when they reached a point 18 feet from the crossing, but did not see it until they were 5 or 6 feet from the crossing, it did not follow that they were guilty of negligence in failing to look and listen when they reached the point 18 feet from the crossing.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by P. C. Davis and wife against the Fort Worth Belt Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Decatur avenue, in Niles City, ran north and south, and was crossed by appellant's line of railway, which ran east and west. The view west, of persons going south on the street toward the crossing, was so obstructed ·by an oil mill, warehouse, and high wire fence near to and on the west side of the street, as to prevent them from seeing trains approaching the crossing from the west until such persons reached a point about 18 feet north of appellant's track at the crossing. Appellant maintained an electric bell at the crossing, which was supposed to ring when a train was approaching same and so warn persons on the street of the fact; and appellant also had a watchman stationed at the crossing to warn such persons (by flagging them) of approaching trains. May 25, 1921, appellee Mrs. Tommie Davis, wife of the other appellee, and one Grant and his wife, were in an automobile, owned and then being operated by Grant, traveling south on said street, when the automobile was struck at the crossing by one of appellant's trains, which was backing east over the crossing from a point west thereof. As a result of the collision Mrs. Davis was thrown from the automobile to the ground, whereby she suffered injury to her person. In the July following she, joined by her husband, commenced this suit, alleging that the collision was due to negligence on the part of the flagman at the crossing, in that he negligently failed to warn her and the other occupants of the automobile of the fact that the train was approaching the crossing, and to negligence on the part of appellant's employés operating the train, in that they failed to blow the whistle and ring the bell of the locomotive as the train moved to the crossing, and in that they were operating the train at a high and excessive rate of speed. The jury found on special issues submitted to them that the flagman and the employés in charge of the train, respectively, were guilty of negligence as alleged by appellees, and that the negligence they were respectively guilty of was a proximate cause of the collision. They further found that Grant and Mrs. Davis could have seen the train approaching when they reached a point 18 feet north of the crossing, and that they, respectively, looked and listened for the train at that point; and the stationary bell at the crossing was ringing as the automobile moved toward same, and that the occupants of the automobile heard the bell ringing when they were 1½ blocks from the crossing; that after she heard the bell Mrs. Davis made no effort to have Grant stop the automobile, and that she was not guilty of negligence in failing to make such an effort; that Grant was not guilty of negligence in failing to stop the automobile after he heard the bell; that the collision was not the result of an accident; and that Mrs. Davis was damaged in the sum of $5,000. On the findings stated, the court rendered judgment for appellees for the sum stated, whereupon appellant prosecuted this appeal.

Capps, Cantey, Hanger & Short, W. D. Smith, and Alfred McKnight, all of Fort Worth, for appellant.

Baskin, Eastus & Greines, of Fort Worth, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] A great part of appellant's brief is devoted to its ·contention that the trial court erred when he submitted to the jury the special issues numbered 18 and 19, as follows:

"18. From the evidence in this case, was the plaintiff in this case injured as alleged in plaintiff's petition, as the result of the collision in question?" (Which the jury answered in the affirmative.)

"19. If you answer the above question in

the affirmative, then state: What amount, if any, do you find that the plaintiff was damaged by reason of the injuries, if any, she received at the time of the collision in question?

"In arriving at the amount you will take into consideration the following elements, to wit: The physical pain and mental suffering, if any, already experienced by her as a result of said injuries up to this time, and the physical pain and mental suffering which she will, with reasonable probability, experience in the future as a result of such injuries, if you find from the evidence that she will experience the same; and you may also take into consideration the reasonable value, if any, of the necessary expenses, if any, incurred by plaintiff for the services of physicians."

In support of its contention appellant asserts that appellees, in their petition, alleged "injuries specifically and generally," and that all the injuries were "permanent." It urges that, "under the well-known rules of law and pleading," appellee was entitled to recover only for the specific injuries alleged, and that it was the duty of the court to construe the petition, and in his instructions to the jury confine them to a consideration of specific injuries alleged, which the testimony indicated Mrs. Davis had suffered. It insists the court not only failed to discharge that duty, but, by the instructions in question, authorized the jury to consider injuries alleged but not proven, and injuries proven but not alleged. That there was no substantial difference between the injuries alleged and those proven by testimony the jury had a right to believe, will sufficiently appear, we think, from parts of the record now to be set out. With reference to injuries suffered by Mrs. Davis, appellees in their petition alleged as follows:

"Said plaintiff's body was severely cut and bruised over almost all portions thereof, from her head to her feet and particularly was said plaintiff severely cut and bruised about the head and face and her shoulders and arms, sides and back, and her hips and lower limbs were cut and bruised, strained and sprained, all of which injuries were and are very serious, very painful, permanent, and lasting in their character, and plaintiff has suffered in the past and will continue to suffer in the future and for the balance of her life, great physical pain and mental anguish."

Testifying as a witness, Mrs. Davis, said:

"I was injured in that accident. I was bruised about the body; face and head were bruised and cut; all over my limbs and were bruised; my legs and feet and left arm and shoulder and back; and I suffered terribly with my back ever since, and with my left shoulder and arm—haven't any use of it much yet. I was confined to my bed with those injuries. I was for six weeks on the bed and for three months before I was able to do anything, and really am not able to do much yet, but of course I can get around. * * * I have not much use of this shoulder and arm yet. It just pains me so I can't use it, and I can't get my hand back of me at all, up to my waist. I have lost

the motion of my shoulder, can't use that hand back that way at all. * * * My lower limbs were injured, bruised all over and cut. My feet were bruised. My knees were bruised—still stiff in my knees. My back was bruised considerably. I suffered from those bruises about my back. I am still suffering, but of course it is better. * * * I am not suffering from my left arm and back. The bruises have passed away of course. My limbs are still stiff, and I suffer a great deal with them; yet I suffer more with my back and this arm and shoulder, and my knees are mighty stiff."

[2] Appellant complains because the court refused to give to the jury a special charge requested by it, as follows:

"You are instructed that there is insufficient evidence showing that plaintiff's sides, back, hips, or lower limbs have been permanent (permanently) injured, and you are, therefore, instructed that, in answering special issue No. —— in the court's main charge, and in determining the amount therein inquired about, you will not allow any sum of money for alleged personal (permanent?) injuries to the plaintiff's sides, back, hips, and lower limbs."

That it was not error of which appellant has a right to complain to refuse to instruct the jury as requested is apparent, we think. In the instructions he gave, the court did not say anything to the jury about "permanent" injuries, but, in effect, told them to consider, in determining the amount appellees were entitled to recover, only physical pain and mental suffering which Mrs. Davis, had endured, and which they believed from the testimony she would endure in the future. In the light of testimony of Mrs. Davis set out above the instruction given was proper, and the instruction refused was not called for. Du Cate v. Town of Brighton, 133 Wis 628, 114 N. W. 103. Its effect, had it been given, might have been prejudicial instead of beneficial to appellant, in that it might have suggested to the jury that the court thought there was testimony authorizing them to find that injuries suffered by Mrs. Davis, other than those to her "sides, back, hips and lower limbs" were permanent.

[3] We do not think appellant is entitled to a reversal of the judgment, because of the refusal of the trial court to grant it a new trial for alleged misconduct of the jury, in that one of them, after they had retired to the jury room and were considering what their verdict should be, stated that he had passed over the crossing in question and "saw lint cotton on the wire fence south of the oil mill," and another one of them stated that he had passed over the crossing and that "a flagman never flagged him." At the hearing of the motion, the juror Justiss, one of six of the jurymen who testified, said the statements were made as alleged in the motion, but that they did not influence him in the verdict reached. The juror Pulliam testified he heard juror Applivhite say, "There

might have been cotton lint on the 'fence." but that he did not consider what he heard "as evidence in the case." The juror Ford said after the jury reached a verdict he heard one of them say he had passed over the crossing and saw cotton on the fence. The juror Sitthler said he 'thought some of the jurymen mentioned something about cotton being on the fence, or that lint cotton might have been on it. The juror Wilkinson did not hear the statements in question, if they were made, and the juror Osterman did not remember hearing them. The last-mentioned juror testified, and was not contradicted, that the verdict was a practically unanimous one on the first ballot; that one of them "didn't understand the reading" (presumably referring to the court's charge), and that, after another reading, they took another ballot, and that the vote was unanimous on every question except as to the amount they should find for appellees; that two of the jurors did not agree with the others as to the amount on the first ballot, but all agreed on the second ballot. The juror Wilkinson testified that the only disagreement among the jurymen was as to the amount of their verdict—that they all agreed on $5,075 at once, except one, who suggested $5,000 instead, and that his suggestion was promptly accepted. We do not think it should be said that the trial court abused the discretion he had about the matter when he refused to grant a new trial on the showing made. Electric Co. v. Hanson (Tex. Civ. App.) 187 S. W. 533.

It is insisted that the testimony did not warrant the finding of the jury that appellant's employés were guilty of negligence in failing to warn the occupants of the automobile truck of the approach of the train by blowing the whistle and ringing the bell of the locomotive forming a part of same, nor the finding that its employés were guilty of negligence in operating the train at the rate of speed they operated same. It is not necessary to determine whether the contentions should be sustained or not, for the testimony did warrant the finding that appellant's flagman at the crossing was guilty of negligence in failing to warn said occupants that the train was moving to the crossing, and the finding that his negligence was a proximate cause of the accident.

[4] The insistence that it appeared as a matter of law from the testimony that the driver of the automobile was guilty of negligence which was the sole proximate cause of the accident, and the insistence that it so appeared that Mrs. Davis was guilty of contributory negligence, are overruled. The contentions are based on testimony showing that both the driver and Mrs. Davis, as they approached the crossing, heard the bell stationed there ringing, in ample time to have taken precautions which would have avoided the accident, and on testimony that they could have seen the train approaching when they were within 18 feet of the crossing, but did not see it until they were within 5 or 6 feet thereof. If that were all the testimony with reference to that phase of the case, the contentions would be meritorious. But there was testimony which authorized the jury to conclude that the ringing of the bell did not mean, and that both Grant and Mrs. Davis knew it did not mean, that a train was approaching the crossing; that it was an electric bell, and at times would ring "all day long and some days would not ring" at all; and that it rang when trains were approaching the crossing and when they were not. Recognizing, apparently, that the bell could not · be depended upon to warn persons using the street of approaching trains, appellant had stationed a flagman there for the purpose of warning them, and we think the jury had a right to conclude that the driver of the automobile and Mrs. Davis acted as reasonably prudent persons might have acted under the circumstances, in relying upon the flagman to warn them if a train was approaching the crossing, and were not guilty of negligence in assuming, when he did not, notwithstanding the stationary bell was ringing, that a train was not moving to the crossing.

[5] The jury having found that Grant and Mrs. Davis could have seen the train when they reached a point 18 feet north of the crossing, and both Grant and Mrs. Davis having testified that they did not see it until they were within five or six feet of the crossing, appellant insists that the finding of the jury that Grant and Mrs. Davis looked and listened for the train when they reached said point 18 feet from the crossing was not warranted. It may be it was not, but we do not think, if it was not, that the judgment should therefore be reversed, for it did not follow, if they did not then look and listen for the train, that they were guilty of negligence.

Other contentions presented in appellant's brief and not disposed. of by what has been said are also believed to be without merit and are overruled.

The judgment is affirmed.