**BRINKER v. McDONALD et al.**

**No. 1779.**

Court of Civil Appeals of Texas. Eastland.

April 15, 1938.

Kirby, King & Overshiner, of Abilene, for appellant.

Davidson & McMahon, of Abilene, and Pinkney Grissom, of Dallas, for appellees.

LESLIE, Chief Justice.

R. A. Brinker instituted this suit 'against Jerry McDonald, the unmarried daughter of G. H. McDonald, and also against him for damages for personal injuries, damages to his car, medical and hospital bills, etc. He alleged that these damages accrued to him by reason of injuries caused by the negligence of said Jerry McDonald in driving an automobile against the automobile driven by himself.

The plaintiff alleged a number of grounds of negligence and the ·defendant pleaded as-a defense to the suit certain acts of contributory negligence.

The case was tried before the court and jury. A peremptory instruction was given by the trial judge in favor of the defendant G. H. McDonald. The case was submitted to the jury on special issues as against Jerry McDonald. In answer to the special issues the jury found the plaintiff guilty of negligence in different respects and likewise found the defendant guilty of contributory negligence on a number of issues. In each instance the established negligence and contributory negligence was found to be a proximate or contributing cause of the collision and injuries.

The court rendered judgment for the defendant. The plaintiff filed ·a motion for new trial, and, among other things, set up as a ground for a new trial misconduct of the jury in two respects and newly discovered evidence upon which it is claimed the court erred in not granting a new trial.

The motion for a new trial came on for hearing and four of the jurors testified upon the issues of misconduct. The court overruled the motion and the plaintiff appeals, seeking to reverse the judgment upon three assignments of error.

The first assignment is in substance that the trial court erred in overruling plaintiff's motion for new trial, since the motion was based in part on misconduct of the jury in that the jury, on retiring to consider its verdict, made an agreement before answering the special issues to the effect that the plaintiff was entitled to a verdict in certain sums, and then attempted to answer the questions so as to carry out that agreement, and, in doing so, disregarded the evidence upon the issues generally and especially with reference to the issue of contributory negligence; that the verdict reached under such agreement was unanimously returned by the jury, believing that they had achieved such result.

In support of this assignment the plaintiff presents his first proposition. In this it is contended that the jury first considered whether the plaintiff should recover anything from the defendant; that eleven of them first agreed on the answers to the issues submitting the amount of plaintiff's damages; that the remaining juror contended that he should recover nothing; that in considering whether the plaintiff should recover they "considered who was to blame for the collision, the plaintiff or defendant" and on this question the jury stood six 'for plaintiff and six for defendant; ·that after holding out in this manner from Friday until Monday (during which time they reported to the court they could not agree on a verdict), the juror who was holding out that the plaintiff should recover nothing agreed to the amounts of damages as found by the other eleven on condition that the jury find that the plaintiff was as guilty of negligence as the defendant; that all of the jurors agreed to this proposition, having determined on rendering a verdict for the plaintiff for the damages theretofore agreed upon; that believing that the answers so made would cause such judgment to be rendered they delegated to the

foreman, Ward, the authority to answer the other issues in such a manner as to accomplish the agreed result; that the foreman answered the issues, as best he could in his judgment, to effect said result, and in so doing found plaintiff guilty of contributory negligence, which barred recovery for the plaintiff; that the jury did not answer the issues of contributory negligence from the evidence bearing upon said issues.

Under this proposition it is the appellant's contention that the evidence conclusively shows that the jurors agreed to answer the questions so that the plaintiff should recover the sums of money named in their answers in questions 27, 28, and 29, and that they directed their foreman to answer the questions in such way that the plaintiff should recover that amount; that the answers did not carry out the intentions of the jury. Stated differently, it is the contention of the appellant that the conduct of the jurors in arriving at the verdict evidences a straight trade or bargain upon the part of all the jurors under a mistaken idea of law, and that the jurors who were holding out for the plaintiff on the question of who was to blame were induced by Perry (who contended all the time the plaintiff was not entitled to any recovery) to permit Ward to answer the questions of contributory negligence against the plaintiff and thus surrender their convictions under the mistaken belief that Brinker would get the·amount of damages found, regardless of their answers upon the questions of contributory negligence.

In support of the proposition above stated, the appellant relies upon the following authorities: Traders & General Ins. Co. v. Lincecum, Tex.Civ.App., 81 S.W.2d 549; Id., Tex.Com.App., 107 S.W.2d 585; Crosby County Cattle Co. v. Corn, Tex.Civ.App., 25 S.W.2d 283; Gulf, C. & S. F. Ry. Co. v. Harvey, Tex.Com.App., 276 S.W. 895; Conlisk v. Bender, Tex.Civ.App., 245 S.W. 941; Garrison v. Dallas Ry. & Terminal Co., Tex.Civ.App., 33 S.W.2d 295; Dallas Ry. & Terminal Co. v. Garrison, Tex.Com.App., 45 S.W.2d 185; Walker v. Quanah, A. & P. Ry. Co., Tex.Com.App., 58 S.W.2d 4; Simmonds v. St. Louis, B. & M. Ry. Co., Tex.Com.App., 29 S.W.2d 989. If the testimony were conclusive and to the effect contended for by appellant, the proposition should be sustained under said authorities.

It will be seen that the gist of appellant's contention is that the jury in advance of their determination of the issues discussed the case under the general question of whether the plaintiff or defendant should recover, and before answering the issues agreed to render a verdict for the plaintiff for the sums designated, and thereafter proceeded to answer the issues to effect such result. Obviously the contention involves an issue of fact. Four jurors testified concerning their deliberations. The testimony is rather lengthy and it would serve no useful purpose to set forth the same in this opinion. Suffice it to say that the members of this court have carefully considered the entire testimony upon the issues presented and after giving the same due consideration we reach the conclusion that upon the issue of misconduct, which was clearly raised, the evidence is conflicting and the trial court having resolved that conflict in favor of the appellee this court will not disturb the same. The authority for such ruling will be found in Bradshaw v. Abrams, Tex.Com.App., 24 S.W.2d 372; Texas Employers' Ins. Ass'n v. Chocolate Shop, Tex.Com.App., 44 S.W. 2d 989; Moody v. Hahn, 25 Tex.Civ.App. 474, 62 S.W. 940; Gulf, C. & S. F. Ry. Co. v. Blanchard, Tex.Civ.App., 73 S.W. 88; Illinois Central Ry. Co. v. Morris, Tex. Civ.App., 144 S.W. 1163, and the authorities generally.

All of these authorities—those relied on by appellant as well as appellee—as we interpret them, are in harmony in their statement and application of the rules of law which we apply to the facts of this case. In general the cases differ in their facts, but if we are right in the conclusion that an issue of fact only is presented and that. the evidence is conflicting thereon, it follows that it is the duty of this court to affirm the judgment of the trial court on such state of the testimony. The ruling of the court is supported by sufficient evidence.

The second assignment of error is that during the deliberations of the jury one of the jurors went to the scene of the accident, reviewed the same, and when the jury resumed deliberations reported that fact to the jury, together with his conclusions drawn from such inspection. The question arises out of the following circumstances: Saturday evening arrived and the jury had not reached a verdict. Under proper instructions they were excused until Monday. During Sunday the juror, riding in a car with another person,

passed the scene of the accident, to wit, the intersection of Parramore avenue and Mulberry street. He did not discuss the matter with the other party in the car, but took notice of the location as the place of the accident. In part he testified:

"Q. Next morning you came back and you told the jury you had been out there, or did you? A. I just told them I drove by there on Sunday, that I was driving around, I went by that street.

"Q. Did you tell them what you saw? A. No, just told them that it was just about like the maps there, from what I could see.

"Q. In other words, from what you could figure, it was about like the maps showed? A. Yes."

None of the jurors asked him any questions concerning it, and the above fairly states the matter complained of. Upon this, it is contended that the jury received other evidence than that admitted on the trial.

The trial occurred long subsequent to the accident. That the two streets intersected at the point was well known to the jury, as all the testimony and the plats so showed. Neither was there any dispute as to the location and position of the respective residences of Sellers and Olds and others at the intersection of said streets. The plats referred to were either made or authenticated by appellant's witnesses. They were introduced in evidence by the appellee without any objections on the part of appellant. We have read all the testimony in connection with this phase of the case, and while becoming conduct upon the part of the juror in question would forbid his mentioning to the jury the matter of his having passed said intersection of the streets and viewing the scene of the collision, we are nevertheless unable to conclude that anything of a material and prejudicial nature to the plaintiff resulted from his communication. Taking the testimony as a whole, it is clear to us that no injury could have resulted from the particular statements charged to him. In other words, we do not believe that the communication made by the juror to his fellow jurymen was of such legal significance as to make it reasonably doubtful as to whether the communication had any harmful effect on the action of the jury or in any respect vitiated the verdict. The whole matter involved in this assignment was in our judgment harmless and immaterial.

Therefore, such authorities as Letsinger v. Panhandle & S. F. Ry. Co., Tex.Civ.App. 286 S.W. 1107; Southern Traction Co. v. Wilson, Tex.Com.App., 254 S.W. 1104; Fort Worth Belt Ry. Co. v. Davis, Tex. Civ.App., 254 S.W. 219, have no application.

■ The third assignment complains that the court erred in overruling the motion for new trial wherein said motion is based upon newly discovered evidence. It is alleged that the newly discovered evidence would be given by one E. V. Sellers. Said Sellers and his wife, Mrs. E. V. Sellers, resided at the time of the accident at the northwest corner of Parramore avenue and Mulberry street in Abilene. Mrs. Sellers was called by the plaintiff as a witness on the trial, as was also Mrs. F. B. Olds and H. H. Adams. Mrs. Olds resided at the time on the southwest corner of the intersection of said streets. These three parties either saw or went to the scene of the accident immediately after its occurrence. The plaintiff soon after the accident employed the firm of Kirby, King & Overshiner to institute and prosecute this suit. The plaintiff had not resided in Abilene a great while and was not acquainted with the section of the city in which the accident occurred. Not being able to make personal investigation of the accident and injury the plaintiff intrusted that matter to said attorneys and "the preparation and trial of said case" was assigned to the care and attention of one member of the firm. Bearing upon the question of diligence and the nature of the testimony as newly discovered a very full and clear affidavit of that attorney was attached to the motion for new trial. The affidavit states in part that the plaintiff being injured and confined to his room for "a week or ten days and not being acquainted he left the matter of investigation to his attorney, * * *; that I am well acquainted with Mr. F. B. Olds and Mrs. E. V. Sellers who each live on a corner of the intersection where the collision occurred; that after my employment I promptly interviewed Mrs. F. B. Olds and learned that she knew something of the collision when and where it happened and how it happened and thereafter I interviewed Mrs. E. V. Sellers based on a statement of Mrs. F. B. Olds that she believed Mrs. Sellers saw or heard the collision; that on information obtained from Mrs. Olds I interviewed Mr. H. H. Ad-

ams who lived one house east of Mulberry Ave. on Parramore Avenue; that these three people were all I could connect with knowledge of the collision how and when it occurred. On the trial of the case plaintiff used all three of the foregoing witnesses. I had no reason to believe that Mr. E. V. Sellers was at home at the time and knew anything about the collision for the reason that neither Mrs. Sellers, Mrs. Olds or Mr. Adams ever mentioned to me that Mr. Sellers was present on the ground immediately after the collision and that he probably knew how it happened and what was said and done by the parties; that I had no knowledge, information or belief that E. V. Sellers saw the collision and would be able to give testimony bearing on how the collision occurred and what was said and done by the parties; that I hadn't seen Mr. Sellers for several weeks prior to the accident and did not see him until several days after the trial was had and never had any conversation with him until some time after the trial and after the jury was discharged after the verdict.

"After the jury was discharged and the result of the trial became known someone told me, the party's name I don't now recall, that Mrs. Sellers said that I should have had E. V. Sellers as a witness on the trial of the case for the reason that he saw the collision and had a conversation with some of the occupants of the Johnson [McDonald] car that collided with the Brinker car on July 26, 1936. * * *"

After gaining the above information the attorney to whom the case was specially assigned consulted said E. V. Sellers and obtained from him an affidavit which was attached to the motion for new trial, and the contents of this affidavit show that said Sellers witnessed the accident; that he was among the first to reach the scene thereof; and that he engaged the defendant Jerry McDonald and the other occupants of her car in conversation. In this affidavit said Sellers states that he saw the McDonald car "coming from the east on the south side of Parramore Avenue containing some girls and saw another sedan (plaintiff's) coming south on the west side of Mulberry Street; at the southwest corner of the intersection the sedan coming west on Parramore Avenue ran into the side of the other sedan coming south on Mulberry Street

* * *; the collision occurred near the south west corner of the intersection, south of the middle of Parramore Avenue and west of the middle of Mulberry Street. I saw the sedan traveling south on Mulberry Street just before the collision and it was being driven at a rate of speed of about 20 miles per hour, in my judgment.

"Immediately after the collision I went to the scene of the accident * * * the young ladies who had been in the sedan traveling west on Parramore Avenue came up I had a conversation with them. Miss Sears who was an occupant of said sedan when the collision occurred stated to me that she was on the back seat putting on her stockings and that she did not know how it happened; that she did not see the approaching car at all until the collision occurred. Miss Jerry McDonald stated that she did not know how it happened; that she was not driving over thirty-five or forty miles an hour and never did see the approaching car until she was within a few feet of it, at which time she threw on her brakes."

Said Sellers makes additional statements in his affidavit that he had not, prior to the trial, disclosed this information to the plaintiff, or his attorney, etc., and that he did not know how they discovered that he saw the collision.

In her testimony on the trial, defendant Jerry McDonald testified that she was driving at a speed of about 15 miles per hour and that she saw Brinker's car a half a block north of the intersection, etc. She also testified that he was driving at least 40 miles an hour. She detailed the circumstances of the collision, as did the other girls used as witnesses.

It is unnecessary to further detail the contents of the affidavit of Sellers or to state the testimony of the young ladies. Obviously if E. V. Sellers had been produced as a witness on the trial and he had testified in substance to the facts detailed in his affidavit such testimony would have been material upon the question of defendant's liability and other issues in the case. It could not be classified merely as impeaching or cumulative testimony.

Upon the record before us the decisive question, in our judgment, is whether or not the plaintiff, or the plaintiff through his attorney, exercised due diligence to discover and procure the testimony of said E. V. Sellers upon the trial. Obviously the at-

torney who had the litigation specially in charge was well acquainted with Mr. and Mrs. E. V. Sellers, although he states he had not seen Mr. Sellers for several weeks prior to the accident. He stated that he was "well acquainted with Mr. F. B. Olds and Mrs. E. V. Sellers who each live on a corner of the intersection where the collision occurred." That after the employment of his firm he promptly interviewed Mrs. F. B. Olds and learned that she knew something of the collision. That he thereafterwards interviewed Mrs. E. V. Sellers *"based on a statement of Mrs. F. B. Olds that she believed Mrs. Sellers saw or heard the collision."* The attorney then stated *"that on information obtained from Mrs. Olds he interviewed one Mr. H. H. Adams who resided in the vicinity of the accident."* (Italics ours.) It is very evident that the leads given by Mrs. Olds led the attorney to interview first Mrs. Sellers and then said Adams. It is fair to assume that the affidavit made by the attorney in support of the plea of newly discovered evidence is as strong as the facts and circumstances would reasonably warrant him in making, but it is noticeable, and somewhat singular, that the affidavit made by him does not state that he made any inquiry of Mrs. Sellers concerning the whereabouts of her husband at the time of the accident.

According to her testimony, the accident occurred near midday on Sunday and immediately after she returned from church and had lunch. It is undisputed that E. V. Sellers was at home at the time of the accident, that he saw it and went to the scene thereof. While the attorney's affidavit states that he had not seen Mr. Sellers for several weeks prior to the accident, it does not state that he inquired of Mrs. Sellers or the Oldses whether Mr. Sellers saw the accident or was present at the scene thereof. There is no showing that Sellers was away from home or out of the city and the affidavit states nothing that would warrant the attorney (making the affidavit) in assuming that Sellers was not at home. The statements and testimony of Mrs. E. V. Sellers do not indicate that she was an unwilling witness. There is no statement in the affidavit that she in anyway affirmatively misled the attorney investigating the accident or gave other than full and frank answers to his questions. In the light of the suggestions made by her after the trial (above noted) she doubtless would have gladly informed the attorney, had she been asked

that her husband was at home and saw the accident.

Under the testimony, and especially in the light of the circumstances specifically pointed out, we are brought to the conclusion that there is evidence supporting, as well as evidence disproving, the fact of the exercise by the plaintiff of due diligence in adducing upon the trial of this case the testimony of said E. V. Sellers. The question of due diligence or the question whether the alleged newly discovered evidence could have been discovered, in the exercise of due diligence, before the trial, is a question of fact. That issue has been decided by the trial court and under the testimony should not be disturbed upon appeal. Peters v. Williams, Tex.Civ.App., 271 S.W. 430, 432; St. L. & S. W. Ry. Co. v. Turner, Tex.Civ.App., 225 S.W. 383, writ refused; Kelsey v. Myers, Tex.Civ.App., 29 S.W.2d 855, 859; Allen v. Texas & N. O. Ry. Co., Tex.Civ.App., 70 S.W.2d 758, 763; 3 Tex.Jur. p. 1085, note 11.

In overruling the motion for new trial we do not believe that the trial court abused his discretion. J. N. McCammon Co., Inc., v. Stephens Co., 127 Tex. 49, 89 S.W.2d 984. The law applicable to the facts of this case, as presented under this assignment, is well stated in the Peters Case, supra, as follows: "The granting of a motion for a new trial on the ground of newly discovered evidence is within the sound discretion of the trial court. He, having heard the testimony and being familiar with all the details of the trial, is best fitted to determine the issues arising on such a motion. Ordinarily, his action thereon will be revised on appeal only when it is shown that such discretion has been abused. St. Louis S. W. Ry. Co. v. Turner (Tex.Civ.App.) 225 S.W. 383, 388; Feagins v. Texas Machinery & Supply Co. (Tex.Civ.App.) 185 S.W. 961, 964, 965. To justify the granting of a new trial on the ground of newly discovered evidence, it must be made to appear that same was discovered after the trial, that it could not have been discovered prior thereto by the exercise of any reasonable diligence, that it is not merely cumulative, and that it is sufficiently material to render it probable that a different finding or judgment on another trial would result from the use of the same." Citing many authorities.

The trial court was in a better position than this court to determine whether on another trial the alleged newly discovered evidence would probably change the result.

Texas & N. O. Ry. Co. v. Scarborough, 101 Tex. 436, 108 S.W. 804. Such considerations are primarily for the determination of the trial court and his action will not be disturbed in the absence of an abuse of sound discretion. Allen v. Texas & N. O. Ry. Co., supra.

For the reasons assigned, the judgment of the trial court is affirmed.