EICHLITZ et al. v. ALLEN et al.

No. 3454.

Court of Civil Appeals of Texas. Beaumont.

June 21, 1939.

Rehearing Denied June 28, 1939.

Vinson, Elkins, Weems & Francis, of Houston, Saner, Saner & Jack, of Dallas, and S. A. McCall, of Conroe, for appellants.

Stewart & DeLange, Wm. N. Bonner, Kenneth Krahl, Robert P. Beman, Jr., and Emory T. Carl, all of Houston, Pitts & Liles, of Conroe, and Edd. R. Campbell, of Houston, for appellees.

O'QUINN, Justice.

This suit in the nature of trespass to try title was filed December 22, 1934, by the plaintiffs, Mrs. Carrie Eichlitz, United Securities Company, and Standard Oil Company of Kansas, with F. W. C. Royalty Corporation intervening herein by the adoption of the plaintiffs' petition. Plaintiffs and the intervenor (who will hereafter be referred to collectively as plaintiffs) seek to recover title to 6.33 acres of land, more or less, in the Lemuel Smith Headright Survey in Montgomery County, Texas, being a part of what is known as the Eichlitz 100 acre tract, the several interests sought to be recovered being in stated proportions. The plaintiffs also plead the three, five, ten and twenty-five year statutes of limitation (Vernon's Ann.Civ.St. arts. 5507, 5509, 5510, 5519).

The defendants include A. R. Allen and wife, Jannie Allen (the latter dying pending the suit), Mrs. Dora McKibben, and Wm. N. Bonner, who filed pleas of not guilty and also plead the three, five, ten, and twenty-five year statutes of limitation, and also filed cross action to recover the land, and in said cross action asserted title to the land and also asserted title by virtue of the three, five, ten, and twenty-five year statutes of limitation. They were the active parties defendant (and will hereafter be referred to as defendants), with A. R. Allen and Mrs. Dora McKibben each claiming and undivided one-half interest in the land and royalty thereof. Defendant. Bonner claimed one-half interest in the oil lease in the land with Tidewater Oil Company, lessee of Mrs. Eichlitz, but the title to the oil lease is not here involved.

Disclaimers were filed by other defendants. The children of the deceased defendant, Mrs. Jannie Allen, Lavada Stephens et al., intervened, but later took nonsuits. Defendants O. Etheridge and N. L. Clark filed formal answers, but asserted no interest in the land.

At the close of the evidence both parties asked for an instructed verdict, which were refused.

The case was tried to a jury upon special issues (22 of them) all of which were answered against the plaintiffs (19 to 22 being answered favorable to defendants' pleas of limitation) and judgment was rendered refusing plaintiffs any recovery, and awarding the land to defendants, one-half to A. R. Allen and one-half to Mrs. Dora McKibben, with certain leasehold interests recognized. There is no controversy among the defendants themselves. Motion for a new trial was overruled and plaintiffs have appealed.

Appellants present twenty propositions based upon eighty eight assignments of error. There are many interesting and well briefed propositions in the briefs of the parties, but after careful consideration of the whole record we conclude that the judgment must be affirmed on the jury's finding in favor of appellees upon their pleas of title by limitation, and so a discussion of the other questions is unnecessary.

The land in controversy, 6.33 acres, is a part of the Lemuel Smith 2/3 league grant in Montgomery County. As we understand the record, on August 12, 1845, the Republic of Texas issued to Lemuel Smith a patent to 2/3 of a league of land in Montgomery County, on the east bank of the San Jacinto River, based upon a land certificate issued to Smith May 4, 1838, by the Board of Land Commissioners of said

county. The land had been duly surveyed and the field notes filed. The title to the certificate had also been adjudicated to Smith on March 4, 1843, in a suit against the Republic of Texas.

Prior to the issuance of the patent, Smith transferred to W. W. Shepperd a tract of 984 acres out of the survey, in consideration of Shepperd's agreeing to perform all necessary services in securing patent from the Republic. This 984 acre tract by regular conveyances was transferred to Stephen C. Thompson on August 14, 1873.

On March 29, 1877, the heirs of Stephen C. Thompson conveyed to James Morgan a 100-acre tract out of the 984 acres. We do not state anything further showing changes in the title to the Morgan 100 acres, but have stated the above only to show the existence of the Morgan tract. As we understand there is no contention that the 6.33 acres in controversy is a part of the Morgan.

Appellee A. R. Allen by deeds acquired 100 acres adjoining the Morgan on the west. He claimed the land in controversy was included in this 100 acres. The easterly line of the Allen 100 acres is the westerly line of the Morgan 100 acre tract. There is a dispute as to the true location of this line. Its determination decides the law suit. Appellees do not claim any part of the Morgan 100 acres, and the appellants do not claim any part of the Allen 100 acres. Both parties claim and insist that they have the record title to the land in controversy, the 6.33 acres, and there is evidence in the record tending to support each contention, but as we are deciding the case on the jury's finding in favor of appellee Allen's claim by limitation (both five and ten years) we do not discuss the question of record title.

On March 12, 1920, Ezra Moorehead and wife Bessie Moorehead, by warranty deed conveyed to Allen the 100 acres claimed by him, the field notes describing same calling to begin on the West bank of Crystal Creek at the Southwest corner of a 100 acre tract known as the Dorris tract. Allen took immediate possession of the 100 acres and has continuously occupied and used same until the filing of this suit. He contends that the 6.33 acres of land in controversy is a part of this 100 acres, and that he has continuously owned, occupied, used and peaceably held same from 1920, until the filing of this suit. The jury so found. If there is sufficient evidence to support this finding, the judgment should be affirmed.

Numerous maps and exhibits were in evidence. We shall not undertake to reproduce in this opinion any of them. Plaintiffs introduced a map, Exhibit No. 69, on which there were delineated Crystal Creek and various lines of several tracts of land in the vicinity. On Crystal Creek at or near a certain bend in the creek there was a crossing called the "Goat Log" crossing. There were numerous bends in the creek. On the map, Exhibit 69, offered by plaintiffs, Allen, while testifying, was requested to and did draw a red line from a point on a bend of Crystal Creek, as delineated on the map, Exhibit 69, and marked "Point 40" northwardly to a point in the north line of the 100 acre tracts marked "Point 41", and said the red line was the true line between the Morgan 100 acres and the Allen 100 acres. This line began at the "Goat Log" crossing as contended by Allen. He testified that he built a fence along his east line (from point 40 at the "Goat Log" crossing to point 41 on the north line) in 1920, and built fences on other lines enclosing land containing the 6.33 acres, and that he continuously used the land and maintained the fences. Crystal Creek does not run exactly north and south, but we are referring to it in that sense. Allen claimed that his land was on the west side of the creek and that the Eichlitz land was on the east of the creek. The fence Allen testified that he built on his east line was on the line running from point 40 ("Goat Log" crossing) to the point 41 on the north line of the 100 acres. When Moorehead sold his 100 acres to Allen in 1920, he showed Allen the corners of the tract, and the southeast corner was near a log crossing on Crystal Creek, and there was then an oak log at the crossing. This is the log crossing referred to as the "Goat Log" crossing. This is shown by the testimony of both Moorehead and Allen. Allen further testified that he and Eichlitz went together to the southeast and northeast corners of the line between their adjoining property, and that these corners were then situated as now claimed by him, Allen— that the southeast corner was the "Goat Log" corner at point 40 on the map (exhibit 69). He repeatedly testified on cross examination that he erected fences from 1920 to 1922 and continuously cultivated and used the enclosed portions. He stated positively that the oil well location (which

seems to have given birth to the controversy) was within his enclosure.

J. A. Young, witness for plaintiffs (appellants), testified that he knew of the "Goat Log" crossing in the bend of Crystal Creek, and identified it as the southeast corner of the Allen 100 acre tract and southwest corner of the Morgan 100 acre tract—that there was an oak tree there marked for a corner; that he had always understood this to be the corner between the Morgan and Allen surveys; that there was a line of old fence posts on a line between points 40 and 41 on the map. The tree eventually fell down and was used as a foot-log for crossing. That Moorehead cultivated the place regularly until he sold it to Allen in 1920.

A. L. Brown, witness for plaintiffs (appellants), testified that he knew of the "Goat Log" crossing; that it was a tree that had fallen across the creek and was used as a foot log; that it was the only log crossing in that vicinity; and that the old fences went right to the "Goat Log" corner on the west side of the creek, but the fence Morgan put in went to about 30 steps from the creek on the east side; that the Morgan tract was the same as the Eichlitz tract.

John R. West, witness for plaintiffs, a surveyor, testified on cross examination that there were several abrupt bends in Crystal Creek in the vicinity of the Morgan southwest corner. That the 6.33 acres in controversy was not included in the bounds of the Morgan 100 acre tract. That the 6.33 acres tied onto the northwest corner of the Morgan for its beginning corner; that the Morgan tract was east of the 6.33 acre tract, and the east line of this tract coincided with the west line of the Morgan. He further testified that the Allen 100 acre tract, according to the field notes in the Allen deed from Moorehead, would include all of the 6.33 acres, and that it would do so no matter where the true west line of the Morgan might be.

The testimony of several witnesses disclosed that there were two fences with a narrow road between along the line between the Morgan and Allen tracts. That the road was used by persons passing that way. That the road became rutty or a small gully from washing out, and eventually fell into disuse. That the fences were not continuously maintained on the Morgan side, but that Allen kept his up. It was shown that at this place there was evidence of an old wash or ditch at the time of the trial.

■ From the record, we think it plainly appears that the 6.33 acres of land in controversy is within the metes and bounds of the land claimed by Allen.

By special issues Nos. 1, 2, 3, and 4, the court properly submitted the three, five, ten and twenty-five year statutes of limitation in favor of plaintiffs. To each of these the jury answered "No".

In answer to special issue No. 19, the jury found that Allen had held peaceable and adverse possession of the land (6.33 acres) cultivating, using and enjoying same for ten consecutive years prior to the filing of this suit, and in answer to special issue No. 20 that Allen had not within said period of ten years, admitted, acknowledged or recognized, by acts, words or conduct, that "some party or parties in Houston, or some lady in Dallas", owned the 6.33 acres of land in controversy. In answer to special issue No. 21, the jury found that Allen had held peaceable and adverse possession of the land, cultivating, using and enjoying the same, and paying all taxes thereon annually as they accrued, and claiming the land under a deed or deeds duly registered for a continuous period of five years next prior to the filing of the suit; and in answer to special issue No. 22, that Allen had not within said period of five years, admitted, acknowledged or recognized by act, word or conduct, that "some party or parties in Houston, or some lady in Dallas", owned the land in controversy.

■■ The question of title in Allen by limitation, and that of whether he during the respective limitation periods, had admitted or recognized title to the land in another, were questions of fact for the jury, and the jury found in appellees' favor on each of them. We have mentioned considerable of the evidence supporting these findings, and such evidence considered with other facts and circumstances in the record, amply support the findings.

■ Appellants complain that the court committed reversible error in submitting special issues as to appellee Allen's limitation of five and ten years, in that the issues improperly placed the burden of proof upon appellants requiring them to prove the negative of the issues, and so the burden of proof was not placed solely upon appellee as required by law.

Special issue No. 19 reads:

"Do you find from a preponderance of the evidence that the defendant, A. R. Allen, or those under whom A. R. Allen deraigned title, has had or have had peaceable and adverse possession of the land described in Special Issue No. One, cultivating, using or enjoying the same for any continuous period of ten (10) years prior to the 17th day of September, 1934?"

"Answer 'we do' or 'we do not' as you find the facts to be."

The jury answered: "We do."

The same form of submission was used in Special Issue No. 21 as to the defendant Allen's plea of five year limitation, and the same answer given by the jury.

The assignments are overruled. There is no force in the contention that the charge requiring the jury to answer "we do", or "we do not" as they found the facts to be, conflicted with or changed the charge given generally that the jury would answer all issues from a preponderance of the evidence. The issues required the jury to answer from a preponderance of the evidence, and the directions as to how to answer was also to answer from the evidence as found by the jury. There was no wrongful placing of the burden on appellants. Traders & Gen. Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391; Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, 958.

■ The eighteenth and nineteenth propositions urge that the judgment should be reversed because of misconduct of the jury. Upon hearing of the motion for a new trial, nine of the jurors were placed on the witness stand and their testimony was somewhat in conflict as to what was said and done by the various jurors in considering their answers to the special issues. It appeared, however, that after considerable discussion the jurors answered the questions in order, and that they all agreed to each answer before same was written down. The trial court heard and considered the evidence on the question and overruled the motion for a new trial thus finding on the facts against the contention of misconduct requiring a new trial. We think no abuse of discretion is shown. In Casstevens v. Texas Pacific R. Co., 119 Tex. 456, 32 S.W.2d 637, 639, 73 A.L.R. 89, Judge Greenwood, speaking for the Supreme Court, in discussing the question of misconduct of the jury, said: "If

the evidence as to misconduct be conflicting, the trial court's finding binds the appellate courts as does any other fact finding on conflicting evidence." Boddeker v. Olschewske, 127 Tex. 598, 94 S.W.2d 730; Bradley v. Texas & P. R. Co., Tex. Com.App., 1 S.W.2d 861; Wells v. Henderson, Tex.Civ.App., 78 S.W.2d 683, writ refused; Brinker v. McDonald, Tex.Civ. App., 115 S.W.2d 1185. The assignments are overruled.

The judgment should be affirmed, and it is so ordered.